STATE of Wisconsin EX REL. William E. MARBERRY, Petitioner-Appellant,

v.

Phillip G. MACHT, Superintendent, Wisconsin Resource Center and Joseph S. Leean, Secretary, Department of Health and Family Services, Respondents-Respondents-Petitioners.

Supreme Court

*No. 99–2446. Oral argument October 9, 2002.—Decided July 2, 2003.*

2003 WI 79

(Also reported in 665 N.W.2d 155.)

722

For the respondents-respondents-petitioners the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the petitioner-appellant there was a brief and oral argument by *Donald T. Lang,* assistant state public defender.

¶ 1. DIANE S. SYKES, J.   This is a review of a decision of the court of appeals granting habeas corpus relief and ordering the release of a sexually violent person from commitment under Chapter 980 of the Wisconsin Statutes as a remedy for the failure of the Department of Health and Family Services ("the department") to conduct a timely post-commitment initial reexamination under Wis. Stat. § 980.07 (2001–2002).[1] We reverse.

¶ 2.   Although we agree with the court of appeals' conclusion that the initial reexamination specified in Wis. Stat. § 980.07 is mandatory rather than directory, it does not follow that the extraordinary remedy of release pursuant to a writ of habeas corpus is proper. Habeas corpus relief is warranted only when the petitioner's liberty is restrained in violation of the constitution or by a court or tribunal lacking jurisdiction, and only when no other remedies are adequate. *State ex rel. Haas v. McReynolds,* 2002 WI 43, ¶ 12, 252

---

[1] All subsequent statutory references are to the 2001–2002 version of the statutes.

Wis. 2d 133, 141, 643 N.W.2d 771. Here, we need not decide whether the failure to comply with the mandatory statutory timeframe for reexamination affects the constitutionality of the underlying Chapter 980 commitment, or the competency of the court to conduct further proceedings in connection with that commitment. The petitioner has not demonstrated that other available remedies are inadequate. Those remedies include a petition for supervised release pursuant to Wis. Stat. § 980.08, or mandamus and contempt. Because there are adequate alternative remedies, habeas corpus relief in the form of discharge and release from commitment is unwarranted.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3. William Marberry was committed as a sexually violent person on July 15, 1998, in Dane County Circuit Court, pursuant to Wis. Stat. § 980.06. According to Wis. Stat. § 980.07(1), the department was required to reexamine Marberry's mental condition within six months of his initial commitment.

¶ 4. The department failed to conduct this reexamination within six months of Marberry's initial commitment. Eleven months after his commitment, on June 15, 1999, Marberry filed a petition for a writ of habeas corpus in Winnebago County Circuit Court seeking discharge and release from the Chapter 980 commitment because he still had not received the initial reexamination required by Wis. Stat. § 980.07(1). On September 9, 1999, the circuit court, the Honorable Robert A. Hawley, denied Marberry's habeas petition, but ordered the department to promptly conduct the reexamination. Marberry appealed.

¶ 5. The court of appeals certified the case to this court. We accepted the certification and, with one

justice not participating, divided equally. *State ex rel. Marberry v. Macht,* 2001 WI 19, 241 Wis. 2d 695, 623 N.W.2d 135 (per curiam). The matter was returned to the court of appeals.

¶ 6. In the meantime, on June 29, 2000, almost two years after his initial commitment and more than nine months after the order from the Winnebago County Circuit Court, the department finally conducted a reexamination of Marberry's mental health under Wis. Stat. § 980.07. The examiner concluded that Marberry's mental disorder had not abated. Marberry received another reexamination, and, in a report dated January 8, 2002, was again found to be unfit for release.[2]

¶ 7. Subsequent to these findings, the court of appeals reversed the circuit court, holding that the six-month timeframe in Wis. Stat. § 980.07(1) for an initial reexamination is mandatory and that Marberry was entitled to release from his Chapter 980 commitment as a remedy. *See State ex rel. Marberry v. Macht,* 2002 WI App 133, 254 Wis. 2d 690, 648 N.W.2d 522. We granted the state's petition for review, and now reverse.

## II. STANDARD OF REVIEW

¶ 8. We apply a de novo standard of review to legal issues arising in the context of a petition for habeas corpus. *State ex rel. Hager v. Marten,* 226 Wis. 2d 687,

---

[2] We take judicial notice of the subsequent reexamination proceeding. We also take judicial notice that Marberry has received a third reexamination, subsequent to oral argument in this case. At a hearing in Dane County Circuit Court on December 12, 2002, the Honorable Daniel R. Moeser held that Marberry remains a sexually violent person and ordered that his commitment continue.

693–94, 594 N.W.2d 791 (1999). This habeas petition arises in the context of a Chapter 980 commitment and presents an issue of statutory interpretation. Statutory interpretation is a legal issue that we review de novo. *In re Commitment of Curiel*, 227 Wis. 2d 389, 404, 597 N.W.2d 697 (1999); *In re Commitment of Sprosty*, 227 Wis. 2d 316, 323, 595 N.W.2d 692 (1999); *State v. R.R.E.*, 162 Wis. 2d 698, 706–07, 470 N.W.2d 283 (1991).

## III. DISCUSSION

¶ 9.  Chapter 980 governs the involuntary commitment of individuals who have been adjudicated as "sexually violent person[s]." *See* Wis. Stat. § 980.02(2). A "sexually violent person" is a person who has been convicted, adjudicated delinquent, or found not guilty by reason of mental disease or defect of a sexually violent offense and "is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." Wis. Stat. § 980.01(7). If a circuit court or a jury determines that a person is a sexually violent person within the meaning of Chapter 980, "the court shall order the person to be committed to the custody of the department for control, care and treatment until such time as the person is no longer a sexually violent person."[3] Wis. Stat. § 980.06.

¶ 10.  Chapter 980 provides for periodic reexaminations of the committed person's status as a sexually violent person:

---

[3] The chapter's provisions have been upheld against repeated challenge. *See, e.g., In re Commitment of Laxton,* 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784, *cert. denied,* 123 S.Ct. 870 (2003); *In re Commitment of Curiel,* 227 Wis. 2d 389, 597 N.W.2d 697 (1999); *In re Commitment of Kienitz,* 227 Wis. 2d 423, 597 N.W.2d 712 (1999); *State v. Post,* 197 Wis. 2d 279, 541

If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged. At the time of a reexamination under this section, the person who has been committed may retain or seek to have the court appoint an examiner as provided in s. 980.03(4).

Wis. Stat. § 980.07(1).[4]

¶ 11. In addition to the periodic reexaminations required by Wis. Stat. § 980.07(1), persons committed under Chapter 980 may petition for supervised release into the community:

Any person who is committed under s. 980.06 may petition the committing court to modify its order by authorizing supervised release if at least 18 months have elapsed since the initial commitment order was entered or at least 6 months have elapsed since the most recent release petition was denied or the most recent order for supervised release was revoked. The director of the facility at which the person is placed may file a petition [for supervised release] under this subsection on the person's behalf at any time.

N.W.2d 115 (1995), *cert. denied* 521 U.S. 1118 (1997); *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995), *cert. denied*, 521 U.S. 1118 (1997).

[4] Indigent persons have the right to a court-appointed examining expert. *See* Wis. Stat. § 980.03(4). ("If the person is indigent, the court shall, upon the person's request, appoint a qualified and available expert or professional person to perform an examination and participate in the trial or other proceeding on the person's behalf.").

Wis. Stat. 980.08(1).[5]

¶ 12.    Within 20 days of the receipt of a petition for supervised release, the court "shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate, who shall examine the person and furnish a written report of the examination to the court within 30 days after appointment." Wis. Stat. § 980.08(3). The court must hear the petition within 30 days of the filing of the report, unless the petitioner waives the time limit. Wis. Stat. § 980.08(4). The statute provides that "[t]he court shall grant the petition [for supervised release] unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care." *Id.*

¶ 13.    Chapter 980 also provides that a committed person may petition for discharge with the approval of the secretary of the department, Wis. Stat. § 980.09(1), or without the secretary's approval, Wis. Stat. § 980.09(2). There is also an additional discharge procedure that can be invoked by the committed person at any time, although this option carries some procedural obstacles if prior discharge petitions have been denied or declared frivolous. *See* Wis. Stat. § 980.10 (If there are prior denials or frivolous petitions, "the court shall deny any subsequent petition under this section without a hearing unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted."). As-

---

[5] At the time Marberry was committed in 1998, this statute allowed a petition for supervised release after only six months. The six-month period was amended to 18 months by 1999 Wis. Act 9, § 3232p, effective October 29, 1999.

suming no previous denials or frivolous petitions, a petition for discharge pursuant to Wis. Stat. § 980.10 triggers the procedures in Wis. Stat. § 980.09. At the hearing on any of these discharge petitions, "[t]he state has the burden of proving by clear and convincing evidence that the petitioner is still a sexually violent person." Wis. Stat. § 980.09(1)(b) and (2)(b).

¶ 14.  We have held that Chapter 980 "is aimed primarily at treating the sexually violent person, not punishing the individual." *State v. Carpenter,* 197 Wis. 2d 252, 267, 541 N.W.2d 105 (1995). The law is intended to "protect[] the public by providing concentrated treatment for convicted sex offenders who are at a high risk to reoffend based upon a mental disorder which predisposes them to commit acts of sexual violence." *Id.* at 273–74. Protection of the public and treatment of persons who are dangerous because of mental disorders that predispose them to sexual violence are "significant nonpunitive and remedial purposes" that justify indefinite civil commitment. *Id.* at 271; *State v. Post,* 197 Wis. 2d 279, 314, 541 N.W.2d 115 (1995). Chapter 980 provides for discharge from commitment once the statutorily-defined dangerousness "abates." *Carpenter,* 197 Wis. 2d at 268 (citing Wis. Stat. § 980.09). Until that point, "[c]ommitment in a secure setting that provides specialized treatment for sexual offenders serves both to protect society and to treat the individual." *Post,* 197 Wis. 2d at 314.

A. Mandatory Or Directory

¶ 15.  We agree with the court of appeals that the time limits for periodic reexamination contained in Wis.

Stat. § 980.07(1) are mandatory rather than directory.[6] *See Marberry*, 254 Wis. 2d 690, ¶ 27. Whether a statutory provision is mandatory or directory is a question of legislative intent. *R.R.E.*, 162 Wis. 2d at 707. "Although the use of the word 'shall' in a statute suggests that the provision is mandatory, this court has often held that statutory time limits are directory despite the use of the word 'shall.' " *Id.* Thus, "the determination of whether 'shall' is mandatory or directory is not governed by a *per se* rule." *Id.*

¶ 16.   Although we have stated that there is no per se rule, we have also held that "[t]he general rule in interpreting statutory language is that the word 'shall' is presumed mandatory. Further support is given to a mandatory interpretation of 'shall' when the legislature uses the words 'shall' and 'may' in a particular statutory section, indicating the legislature was aware of the distinct meanings of the words." *In re Commitment of Sprosty*, 227 Wis. 2d 316, 324, 595 N.W.2d 692 (1999)(citations and internal quotation marks omitted). The legislature has used both the word "shall" and the word "may" in Wis. Stat. § 980.07.[7] "Therefore, we 'can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings.' " *Id.* at 325 (quoting *Karow v. Milwaukee County Civ. Serv. Comm'n,* 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978)).

¶ 17.   In addition to the foregoing general rules, we consider the following factors in determining

---

[6] The department did not contest this conclusion in its current briefs, and conceded this point at oral argument. Accordingly, we address it only briefly.

[7] *See* Wis. Stat. 980.07(1) ("the department *shall* conduct an examination") and Wis. Stat. § 980.07(3) ("the court . . . *may* order a reexamination") (emphasis added).

whether a statutory time limit is mandatory or directory: "the existence of penalties for failure to comply with the limitation, the statute's nature, the legislative objective for the statute, and the potential consequences to the parties, such as injuries or wrongs." *State v. Thomas,* 2000 WI App 162, ¶ 9, 238 Wis. 2d 216, 222, 617 N.W.2d 230; *see also R.R.E.,* 162 Wis. 2d at 708.

¶ 18.   The statute does not provide a penalty for failure to comply with the time limits for periodic reexamination. While "[t]he legislature's failure to state the consequences of noncompliance with the established time limit lends support for construing the statute as directory," the absence of a penalty for noncompliance "is only one factor to be considered in the analysis of whether the legislature intended the provision to be mandatory or directory." *Karow,* 82 Wis. 2d at 571–72.

¶ 19.   As we have noted, Chapter 980 is a civil commitment statute with dual objectives: protection of the public and treatment of persons with dangerous mental disorders. Untimely periodic reexamination frustrates the treatment objective and may keep persons who are no longer a danger to the public in institutionalized care longer than necessary.

¶ 20.   In this regard, the failure to comply with the time limits for periodic reexamination has substantial consequences for the committed person. The initial and periodic reexaminations determine the committed person's appropriateness for continued institutional care, supervised release, or discharge. As the court of appeals observed, the "committed person's liberty hinges upon this initial reexamination." *Marberry,* 254 Wis. 2d 690, ¶ 27.

731

¶ 21. The weight of these considerations leads us to conclude, as did the court of appeals, that the time limits for periodic reexamination in Wis. Stat. § 980.07(1) are mandatory. This conclusion, however, does not necessarily require release and discharge from commitment as a remedy for noncompliance with the statutory mandate.

B. Remedy

¶ 22. "The writ of habeas corpus has its origins in the common law, and its availability is guaranteed by the U.S. Constitution, the Wisconsin Constitution, and by state and federal statute."[8] *Haas,* 252 Wis. 2d 133, ¶ 11 (citing *State ex rel. Fuentes v. Court of Appeals,* 225 Wis. 2d 446, 450, 593 N.W.2d 48 (1999)); *see also* U.S. Const. art. I, § 9, cl. 2; 28 U.S.C. § 2241; Wis. Const. art I, § 8(4); Wis. Stat. § 782.01. Habeas corpus is a civil proceeding which "test[s] the right of a person to his personal liberty." *State ex rel. Dowe v. Waukesha County Cir. Ct.,* 184 Wis. 2d 724, 728, 516 N.W.2d 714 (1994). The purpose of the writ is to protect and vindicate the petitioner's right to be free from illegal restraint. *State ex rel. Zdanczewicz v. Snyder,* 131 Wis. 2d 147, 151, 388 N.W.2d 612 (1986).

¶ 23. The extraordinary relief provided by the writ of habeas corpus is available only in limited circumstances and is subject to three prerequisites. *Haas,*

---

[8] Literally, habeas corpus is an imperative that translates to "that you have the body." A writ of habeas corpus is used to command an official "to bring a person before a court, most frequently to ensure that the party's imprisonment or detention is not illegal." *See Black's Law Dictionary* 715 (7th ed. 1999).

252 Wis. 2d 133, ¶ 12. First, the petitioner must be restrained of his liberty. *Id.* Second, the restraint must have been imposed without jurisdiction or contrary to constitutional protections. *Id.* Third, the petitioner must demonstrate that there are no other adequate remedies available in the law. *Id.* Absent a showing that all three criteria are met, the writ of habeas corpus will not issue. *Id.*

¶ 24.   In *Haas,* we evaluated the propriety of habeas relief by reference to the third requirement alone, because our conclusion on the adequacy of alternative remedies was dispositive. *Id.,* ¶ 13. We do the same here. While there is no dispute that Marberry is restrained of his liberty, the parties disagree about whether the department's noncompliance with the statutorily mandated time limits for initial reexamination affects the constitutionality of the underlying commitment or the competency of the court to conduct further proceedings in connection with the commitment. The court of appeals did not directly address this second criterion for habeas relief. In any event, because the absence of any of the three habeas requirements defeats the writ, we confine our analysis to the third requirement, as we did in *Haas.*

¶ 25.   "The writ of habeas corpus does not issue as a right." *Id.,* ¶ 14.

> We have long and consistently held that the extraordinary writ of habeas corpus is not available to a petitioner when the petitioner has other adequate remedies available. For instance, habeas corpus is not available to challenge a bindover decision by a court commissioner because the decision is challengeable on a statutory motion to dismiss. Similarly, the writ is not available to challenge the sufficiency of probable cause to issue a criminal complaint, even when the challenge is

brought between arrest and the preliminary hearing, because the challenge can be made using other remedies at trial. Habeas corpus proceedings are likewise not available to challenge an administrative order revoking probation, since a writ of certiorari is available, and is the proper remedy under such circumstances. In short, if the petitioner has an otherwise adequate remedy that he or she may exercise to obtain the same relief, the writ will not be issued.

*Id.* (citations omitted).

¶ 26. It is undeniably true that in Marberry's case, the department was in prolonged and inexcusable noncompliance with its mandatory duties under Wis. Stat. § 980.07. Nevertheless, the law provides adequate remedies for the failure to conduct timely periodic reexaminations other than release pursuant to a habeas writ. Chapter 980 contains a procedure, outlined above, by which a committed person can trigger a court-ordered reexamination via a petition for supervised release pursuant to Wis. Stat. § 980.08.

■

¶ 27. As we have noted, Wis. Stat. § 980.08 was amended in 1999 to preclude petitions for supervised release during the first 18 months of commitment.[9] Under certain circumstances, therefore, this statutory vehicle for compelling reexamination may be unavailable. There is, in such circumstances, another remedy: a writ of mandamus to compel an initial or periodic reexamination, backed up by contempt, with a fine or jail as a sanction. Mandamus may issue to compel a

---

[9] *See supra* note 5. As we have also noted, however, at the time Marberry was committed in 1998, the statute allowed him to file a petition for supervised release after only six months, the same timeframe as the initial reexamination under Wis. Stat. § 980.07(1).

public officer to perform a duty of his office presently due to be performed where there is a clear legal right, a positive and plain duty, substantial damage in the absence of performance, and no other adequate remedy. *Pasko v. City of Milwaukee,* 2002 WI 33, ¶ 24, 252 Wis. 2d 1, 643 N.W.2d 72. Because Wis. Stat. § 980.07 imposes a mandatory duty upon the department, mandamus to compel performance of that duty is an appropriate and available remedy.

¶ 28. As Judge Brown noted in his partial dissent in this case, "[w]here a writ [of mandamus] or court order has been issued and the mental reexamination still has not been performed, as is the case in this instance, the public officials may be held in contempt for their failure to comply with the order. . . . [T]his remedy would be an effective tool precisely because it focuses on the particular persons who have the authority to ensure that procedures are established to carry out the requirements of the statute." *Marberry,* 254 Wis. 2d 690, ¶ 52 (Brown, J., concurring in part, dissenting in part).

¶ 29. We agree with Judge Brown on the adequacy and appropriateness of mandamus and contempt as remedies for the department's failure to perform its mandatory duties under Wis. Stat. § 980.07. Release and discharge from commitment pursuant to habeas for failure to conduct a timely reexamination would jeopardize public safety and contradict the express statutory criteria for supervised release and discharge. Chapter 980 provides that a person committed may be released on supervision or discharged from commitment only after a court finds that he or she is no longer a sexually violent person and that it is no longer substantially probable that he or she will commit acts of sexual violence. *See* Wis. Stat. §§ 980.08, 980.09,

980.10; *see also* Wis. Stat. § 980.06 (Sexually violent persons are committed to the department for "control, care and treatment until such time as the person is no longer a sexually violent person."). Release absent this substantive determination by a court would compromise both of Chapter 980's principal purposes—treatment and public protection—because, until a circuit court finds otherwise, the committed person remains in need of treatment and at high risk to reoffend.

¶ 30.    "Release of a ch. 980 patient whose dangerousness or mental disorder has not abated serves neither to protect the public nor provide care and treatment for·the patient." *Marberry,* 254 Wis. 2d 690, ¶ 39 (Brown, J., concurring in part, dissenting in part.) Accordingly, "release is not only inappropriate, it is not justifiable under the dual purposes of the statute: protection of the public from sexually violent persons likely to reoffend and care and treatment of the patient." *Id.,* ¶ 42. Mandamus and contempt are more appropriate to the purposes of the statute:

> If the purpose is to provide a sanction that will force state officials to follow the law, contempt is the better sanction than release [of the committed person]. Release is an excessive sanction because the costs are way too high. Contempt is workable and gets the message out to the people who are really and finally responsible for violating the legislature's mandatory time periods for reexamination. The cost is visited upon these flagrant violators and not the public. If someone at [the department] knew he or she could go to jail for ignoring a mandamus, he or she would take extra care to make sure the individual received his or her reexamination.

*Id.,* ¶ 54.

¶ 31. Although admittedly in a somewhat different context, we have previously held that the failure to comply with reexamination time limits in a civil commitment does not necessarily require release as a remedy. *R.R.E.*, 162 Wis. 2d at 711–12.[10] *R.R.E.* involved a Chapter 51 commitment following a verdict of not guilty by reason of mental disease or defect in a criminal case pursuant to Wis. Stat. § 971.17. *R.R.E.*, 162 Wis. 2d at 703. The circuit court failed to conduct a hearing within 30 days of the filing of a reexamination petition as required by Wis. Stat. § 51.20(16)(c). In *R.R.E.*, we recognized the "strong competing policy of requiring courts to strictly follow procedural rules and time limitations which are designed to ensure that the

---

[10] As a general matter, Chapter 51 commitments are permitted for reasons other than danger to others, although *R.R.E.* arose in the context of a Chapter 51 commitment following a verdict of not guilty by reason of mental disease or defect in a criminal case pursuant to Wis. Stat. § 971.17. *State v. R.R.E.*, 162 Wis. 2d 698, 703, 470 N.W.2d 283 (1991). In contrast, under Chapter 980, significant danger to others is the only justification for commitment. Persons committed under Chapter 980, therefore, are considered more dangerous as a class than those committed under Chapter 51. *See Post*, 197 Wis. 2d at 322. This distinction between Chapter 980 and other types of civil commitment led the court of appeals to distinguish this case from *State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 320 N.W.2d 27 (Ct. App. 1982) (failure to conduct final commitment hearing within 14 days of detention pursuant to Wis. Stat. § 51.20(7)(c) requires release from temporary detention and dismissal of commitment petition); and *N.N. v. County of Dane*, 140 Wis. 2d 64, 409 N.W.2d 388 (Ct. App. 1987)(same result in Chapter 55 protective placement). *Marberry*, 254 Wis. 2d 690, ¶¶ 6–16. We agree with the court of appeals' analysis on this point. *Lockman* and *N.N.* were also in a different procedural posture than this case, as commitment had not yet occurred in either case.

right of committed persons to a hearing to review the need for their continued confinement is not unduly delayed or effectively denied by a court's delays." *Id.* at 711.

¶ 32.   We concluded, however, that had the legislature intended to provide for release when the time limits for the reexamination hearing were violated, it likely "would have expressly stated its intention in order to alert the circuit courts of the extreme consequences for failing to comply with the time limitations." *Id.* at 710. We further held that the statutory policy of protecting the public outweighed the competing interest of the committed individual in receiving his or her hearing in strict accordance with the statutory time limitations for the reexamination hearing. *Id.* at 711. Although these conclusions were reached in the context of a decision that the statutory time limits were directory rather than mandatory (unlike our conclusion here), we also observed that release was not proper as a matter of remedy, because the committed individual retained the ability to compel a hearing through other statutory means, and also by a writ of mandamus, when the time limitation in the statute went unobserved. *Id.* at 714–15.

¶ 33.   Similarly here, release is not the only adequate remedy for noncompliance with the statutory time limits for reexamination, because the committed person retains the ability to compel a reexamination under the statutory procedure for supervised release, or, if the statutory remedy is unavailable, by a writ of mandamus. These remedies are effective and adequate, and consistent with statutory purposes of treatment and protection of the public.

738

¶ 34. For the foregoing reasons, therefore, we conclude that Marberry is not entitled to release from his Chapter 980 commitment as a remedy for the department's failure to perform an initial reexamination in accordance with the six-month time limit of Wis. Stat. 980.07(1).[11] Because there are adequate, alternative remedies available, relief pursuant to habeas corpus is improper.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 35. JUSTICE DAVID T. PROSSER, JR. did not participate.

¶ 36. ANN WALSH BRADLEY, J. *(concurring).* I understand and share the reticence of Justice Sykes' lead opinion for the remedy of release. Marberry continues to suffer from a mental illness which makes it substantially probable that he will engage in acts of sexual violence if not continued in institutional care. Release at this time would unduly endanger the public.

¶ 37. Nevertheless, I disagree with the proffered remedies of the lead opinion.[1] They are inadequate and unworkable. Perhaps most problematic, however, is that the lead opinion's remedies are misdirected. Rather than put the onus of ensuring compliance with the law on a mentally ill, institutionalized patient, I

---

[11] We emphasize again that Marberry has now been reexamined, three times, and his mental disorder and dangerousness has not abated. According to each of these reexaminations, he remains a sexually violent person.

[1] Because the court is evenly divided on the issue of remedy, neither the lead opinion nor the concurring opinion establishes precedent on this issue. Nevertheless, the court is unanimous in the conclusion that release is not a proper remedy at this time.

739

would put it where it belongs: on the Department of Health and Family Services (DHFS).

¶ 38. The judges of the court of appeals and the justices of this court have concluded that DHFS has violated the law in failing to conduct a timely initial reexamination. An initial reexamination is mandatory. As the lead opinion recognizes, the constitutionality of a Chapter 980 commitment hinges on treatment and the initial reexamination is an essential part of that treatment. It is important to the safety of the citizens of our state, to the mentally ill committees, and to our system of justice to make sure that Chapter 980 continues to be applied constitutionally.

¶ 39. Unlike the lead opinion, I would not rely on a mentally ill, institutionalized patient, likely without resources and representation, to ensure compliance. Instead, I would direct the effort to ensure compliance towards those who are violating the law. Because I believe that the remedies offered by the lead opinion are illusory and will ultimately lead to Chapter 980 being unconstitutionally applied, I cannot join it. Let me explain.

¶ 40. The essence of the lead opinion rests on the premise that its proffered remedies are adequate. It suggests that a writ of mandamus or order followed by contempt charges will satisfactorily protect the constitutional rights at stake. Even a cursory examination of these remedies demonstrates that they are both inadequate and unworkable.

¶ 41. I need not look to the facts of some hypothetical case to illustrate the inadequacy. Marberry was held for over 23 months before he received his initial post-commitment reexamination. Such an examination was required to occur within six months after commit-

ment, and subsequent reexaminations are required to occur at least once every 12 months thereafter.

¶ 42.    Here, eight months after the State missed the statutorily mandated deadline, the circuit court ordered DHFS to "promptly" conduct the reexamination. Instead, apparently disregarding the court order that it be done promptly, DHFS finally conducted the reexamination nearly two years after Marberry's initial commitment and nine months after receiving the court order. The facts of this case, alone, demonstrate the inadequacy of the lead opinion's remedy of getting a mandamus or order from the court to obtain prompt compliance with the mandatory time frames imposed by the statute.

¶ 43.    Undoubtedly realizing the dilemma that the facts of this case present to the validity of its approach, the lead opinion incorporates into its proffered remedy a second step: a committed individual should bring contempt proceedings to enforce the court's order. It is unclear from the lead opinion what type of contempt it is suggesting.

¶ 44.    If it is a punitive contempt proceeding, as the dissent in the court of appeals seems to suggest, the proffered remedies border on the impossible.[2] If it is a

---

[2] In suggesting that contempt is an alternative remedy, the partial dissent in the court of appeals states: "If an individual's actions are shown to be in flagrant disregard of the court's order, a jail term would be more than appropriate." Such an assertion implies that the contempt is imposed as a sanction for past "flagrant disregard of the court's order." *State ex rel. Marberry v. Macht,* 2002 WI App 133, ¶ 54, 254 Wis. 2d 690, 648 N.W.2d 522 (Brown, J., concurring in part, dissenting in part). Thus, the partial dissent apparently is referring to punitive contempt.

741

remedial contempt proceeding, it approaches the improbable. Neither constitutes an adequate or workable remedy.

¶ 45.   It borders on the impossible because punitive sanctions for contempt of court may not be initiated by a committed person like Marberry. Wis. Stat. § 785.03(1)(b). Only a district attorney, the attorney general, or a special prosecutor appointed by a court may seek imposition of such sanctions. It is unlikely that the same individuals who are filing Chapter 980 petitions on behalf of the State will change hats and initiate proceedings on behalf of a committed person to impose punitive sanctions against state officials who fail to conduct a timely reexamination.

¶ 46.   Obtaining relief through a remedial contempt proceeding is at best improbable. To seek remedial sanctions for contempt of court, the committed person must first obtain the initial court order and wait for a period of time for DHFS to comply with the order. Next, the committed person would have to identify the person to be held accountable for not complying with the order.

¶ 47.   Identifying the person who is responsible for the delay is typically not readily accomplished in this type of case. Is it the secretary of DHFS or the superintendent of the particular facility who is responsible for performing this task? Perhaps the culprit is the head of the treatment unit or a particular staff psychologist, if any, assigned to conduct the exam. Significantly, to this day, there has been no indication of the identity of who should have been held accountable in this case.

¶ 48.   Additional delays will inevitably occur as the court determines who should be the subject of a contempt order and grants those individuals time to

comply with the order. This is a cumbersome process, particularly for a committed person who is suffering from a mental illness and who is often unrepresented. It is likely that, if relief is obtained at all, such relief will occur long after the time when the reexamination should have taken place.

¶ 49. Particularly troublesome is the fact that this remedy does not provide the relief to which the committed person is legally entitled: a timely reexamination. Additionally, it fails to create any incentive for the State to comply with the law. At the end of the day, assuming that the mentally ill, institutionalized person is able to successfully navigate through the mandamus and contempt process, all the State likely will have to do to avoid remedial sanctions is provide the reexamination—which is what it should have done in the first place, months or even years ago.

¶ 50. Finally, almost parenthetically, the lead opinion references petitioning for supervised release pursuant to Wis. Stat. § 980.08 as an adequate remedy. Lead op., ¶¶ 26, 27. Its summary discussion of this remedy belies its assertion that it is adequate. The lead opinion dedicates only three sentences to its discussion of this remedy and in the third sentence ultimately concedes that it would not be available as a remedy for some committed persons. Lead op., ¶ 27.

¶ 51. The constitutionality of Chapter 980 has repeatedly been said to rest upon the treatment measures provided for the committed individual. *See State v. Rachel,* 2002 WI 81, ¶ 59, 254 Wis. 2d 215, 647 N.W.2d 762; *State v. Carpenter,* 197 Wis. 2d 252, 271–72, 541 N.W.2d 105 (1995). In *Carpenter* and *Post,* we found Chapter 980 to be constitutional because we concluded that treatment and protection of the public, not additional punishment, were the primary purposes

of Chapter 980. *See Carpenter,* 197 Wis. 2d at 266; *State v. Post,* 197 Wis. 2d 279, 313, 541 N.W.2d 115 (1995).

¶ 52. In Marberry's case, having received his initial reexamination after nearly two years of commitment, only the public protection function can be said to have been accomplished. Without viable treatment, Chapter 980 becomes a mechanism for general deterrence and retribution, a hidden criminal punishment and not a civil involuntary commitment for the betterment of the individual committed and the community at large.

¶ 53. In *State v. Rachel,* 2002 WI 81, 254 Wis. 2d 215, 647 N.W.2d 762, the majority predicated the constitutionality of Chapter 980 on the various procedures available to the committed individual to secure review of his commitment. It is apparent that the procedures, as implemented here, have failed.

¶ 54. In *Rachel,* I wrote a separate concurring opinion to clearly delineate the emerging dilemma with Chapter 980:

> In *State v. Carpenter,* 197 Wis. 2d 252, 267, 541 N.W.2d 105 (1995), which I authored, the court assumed that the State was "prepared to provide specific treatment to those committed under ch. 980 and not simply warehouse them."

> In *State v. Post,* 197 Wis. 2d 279, 308, 541 N.W.2d 115 (1995), where I joined the majority, the court assumed that "the legislature will proceed in good faith and fund the treatment programs necessary for those committed under chapter 980."

> . . . .

> The court's assumptions and the State's good faith are wearing thin.

744

*Rachel,* 254 Wis. 2d 215, ¶¶ 72, 73, 75 (Bradley, J., concurring).

¶ 55. In the dissenting opinion in *Rachel,* Justice Bablitch also expressed his concern regarding the development of Chapter 980. Most notably, he points to the lack of institutional accountability and the illusory nature of the options given to the involuntarily committed individual. *See id.,* ¶¶ 94, 95 (Bablitch, J., dissenting). Both the lack of institutional accountability and the illusory nature of the remedies remain present in our system, as evidenced by this case.

¶ 56. The accountability to ensure that there is compliance with the mandates of Chapter 980 and the constitution should rest with the institution responsible for compliance. To jettison the responsibility for compliance and place it on the back of a mentally ill, institutionalized person makes neither good law nor good sense. As noted above, if there remains continued noncompliance, the constitutional viability is in jeopardy.

¶ 57. The legislators who wrote the law and the public who are protected by the law depend on DHFS complying with the law. We should insist upon no less.

¶ 58. To preserve the constitutional viability of Chapter 980, which is of great import to the public, and to ensure compliance, I would hold this case open for two years so that DHFS can report to the legislature and the public every six months on the status of its compliance. The report should include: (1) the names of the Chapter 980 committed persons who are legally required to have an initial reexamination; (2) the dates of the scheduled reexaminations; and (3) the dates on which the reexaminations actually were conducted.

¶ 59. The lead opinion's remedies provide no incentive to DHFS to conduct its statutorily mandated

duties in a timely manner. Its approach creates no deterrence for the egregious behavior of the State that occurred in this case. Instead, it informs committed persons that they must pursue inadequate and unworkable remedies. Because I believe that the remedy to ensure compliance lies not in some mandamus or contempt proceeding brought by a mentally ill, institutionalized person, but in holding DHFS accountable for complying with the law, I respectfully concur.

¶ 60.  I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON and JUSTICE WILLIAM A. BABLITCH join this opinion.