In re the Commitment of Terry L. Olson:

State of Wisconsin, Petitioner-Respondent,

v.

Terry L. Olson, Respondent-Appellant.†

Court of Appeals

*No. 2004AP412. Submitted on briefs December 15, 2005.
—Decided February 15, 2006.*

2006 WI App 32

(Also reported in 712 N.W.2d 61.)

† Petition to review denied 5-9-06.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Melinda A. Swartz*, assistant state public defender of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Maura FJ Whelan*, assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. On September 10, 2003, the court signed an order committing Terry L. Olson to the Department of Health and Family Services, pursuant to WIS. STAT. ch. 980 (1999–2000)[1] (sexually violent person commitments). Olson claims on appeal that ch. 980 is

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. The parties observe that the current version of WIS. STAT. ch. 980 is different from the version under which Olson was committed, but the changes are not pertinent to the issues here.

unconstitutional because its definition of "dangerousness" lacks "a temporal context" limited to "imminent danger." (Emphasis omitted.) We reject this challenge. Our supreme court expressly refused to recognize a similar "imminent danger" requirement in the context of Wis. Stat. ch. 51 commitments. Our courts have recognized that, as a class, sexually violent persons pose an even greater threat to the public than ch. 51 committees. Not only have they already perpetrated acts that demonstrate their willingness to commit violent sex offenses, their existing mental disorders diminish their capacity to avoid reoffending. Those who treat ch. 980 committees must invest a great deal of time and effort in equipping these individuals with coping mechanisms that enable them to control their predatory desires. It is this propensity for sexual violence, not the precise point at which it may manifest itself, that makes the individual particularly threatening to society. Further, the supreme court has upheld ch. 980 against numerous constitutional attacks and has expressed no misgivings about the lack of an "imminent danger" requirement. Although the issue was not squarely presented in these cases, it was certainly conspicuous, so we doubt that the court would read an imminence requirement into ch. 980.

¶ 2. A petition alleging that a person is a sexually violent person must allege that the person satisfies several criteria: First, the person has been convicted, adjudicated delinquent, or acquitted by reason of mental disease or defect of a sexually violent offense. Wis. Stat. § 980.02(2)(a). Second, the individual is within ninety days of being discharged from confinement, parole, or extended supervision for a sentence imposed for a sexually violent offense. Sec. 980.02(2)(ag). Third, the person has a mental disorder. Sec. 980.02(2)(b).

Finally, the petition must allege that the person is dangerous because this mental disorder makes it likely that he or she will commit further acts of sexual violence. Sec. 980.02(2)(c).

¶ 3. It is the fourth requirement, dangerousness, that Olson finds objectionable.[2] He points out WIS. STAT. ch. 980 is a civil commitment statute. According to Olson, due process prohibits involuntary civil commitments unless the petitioner can prove that the person to be committed poses a risk of *imminent* danger. He reaches this conclusion based on *Lessard v. Schmidt,* 379 F. Supp. 1376, 1381 (E.D. Wis. 1974), *vacated,* 421 U.S. 957 (1975), *and reinstated on remand,* 413 F. Supp. 1318 (E.D. Wis. 1976). In *Lessard,* the federal district court stated that the "findings and standard of proof necessary for an order of commitment are 'mental illness and imminent dangerousness to self or others beyond a reasonable doubt.' " *Id.* at 1380. *Lessard* held WIS. STAT. § 51.02 (1971) unconstitutional because it did not follow this standard. *Lessard,* 379 F. Supp. at 1378–79. At the very least, Olson contends, the statute should limit the time period over which the court assesses dangerousness to "the reasonably foreseeable future." Because it does not, it is also void for vagueness.

¶ 4. We review de novo whether a statute meets constitutional requirements. *State v. Post,* 197 Wis. 2d 279, 301, 541 N.W.2d 115 (1995). The challenger bears the burden of demonstrating the statute's infirmity

---

[2] Olson does not challenge any of the psychiatric testimony or other evidence informing the jury's verdict. He simply attacks the validity of WIS. STAT. ch. 980. Although he does not state which provisions of the Wisconsin Statutes he finds objectionable, we assume he means WIS. STAT. § 980.02(2)(c).

206

beyond a reasonable doubt. *Id.* We accord particular deference to reasonable legislative judgments in the mental health arena, in which "[t]he only certain thing that can be said about the present state of knowledge and therapy regarding mental disease is that science has not reached finality of judgment." *See id.* at 311 (citation omitted); *State v. Dennis H.*, 2002 WI 104, ¶ 13, 255 Wis. 2d 359, 647 N.W.2d 851. Even where the statutory scheme impinges upon a fundamental liberty, as commitment admittedly does, we will not invalidate it on substantive due process grounds as long as it is narrowly tailored to a compelling government interest. *Post*, 197 Wis. 2d at 302. Moreover, we will not declare a statute unconstitutionally vague unless it fails to give notice about what conduct the statute proscribes or fails to provide those who enforce the law with objective standards with which to do so. *State v. Curiel*, 227 Wis. 2d 389, 415, 597 N.W.2d 697 (1999).

¶ 5. We deem Olson's reliance on *Lessard* misplaced. In 2002, our own supreme court considered a challenge to Wis. Stat. ch. 51 and never so much as mentioned *Lessard*. *See generally Dennis H.*, 255 Wis. 2d 359. The court stated that substantive due process did not require the State to restrict the scope of its mental health commitment statutes to individuals who are imminently physically dangerous. *Id.*, ¶ 38. *Dennis H.* observed that the statute was designed to protect "those who are chronically mentally ill and drop out of therapy or discontinue medication, giving rise to a substantial probability of a deterioration in condition to the point of inability to function independently or control thoughts or actions." *Id.*, ¶ 41. "Deterioration," of course, can be gradual and might not result in *immediate* inability to function or control one's actions.

207

*Dennis H.* wholly answers the question of whether ch. 51 requires an "imminence" requirement, and we are bound by that precedent. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (only the supreme court can overrule a supreme court decision).

¶ 6. If an imminence requirement is not mandated in WIS. STAT. ch. 51 commitments, it is even less appropriate for WIS. STAT. ch. 980 confinements. Our courts have recognized that ch. 980 serves two important compelling purposes: protecting the public from violent sex offenders and providing care and treatment to individuals whose mental disorders predispose them to sexual violence. *Post*, 197 Wis. 2d at 302–03. As a class, these individuals present a graver danger to the public than others with mental disorders. *Id.* at 322; *State ex rel. Marberry v. Macht*, 2003 WI 79, ¶ 31 n.10, 262 Wis. 2d 720, 665 N.W.2d 155. Whereas the state generally confines ch. 51 patients for reasons other than danger to others, such danger supplies the *only* basis for a ch. 980 commitment. *Marberry*, 262 Wis. 2d 720, ¶ 31 n.10. Individuals committed pursuant to ch. 980 pose a danger because their mental disorders affect their ability to control their antisocial behavior. *Post*, 197 Wis. 2d at 323–24. Overcoming these impulses may require a great deal of treatment aimed at developing adequate coping skills and sometimes entails the use of nontraditional therapies where other methods fail. *Id.* at 310–11, 324. Such therapy takes time, the length of which may differ from one offender to the next. Moreover, in *every* ch. 980 case, the individual's propensity for violence has already manifested itself in concrete behavior: the statute only allows commitment where the person has already committed a violent offense. *See Post*, 197 Wis. 2d at 317. The underlying propensity for

uncontrollable violence is not confined to the immediate future but rather presents an ongoing threat to the public. Thus, the fact that the legislature did not myopically limit its view of dangerousness to the immediate future does not render the statute unconstitutionally infirm.

¶ 7. We find support for our conclusion in several supreme court precedents. We observe that despite numerous invitations to invalidate WIS. STAT. ch. 980, the court has declined to do so. *Post, Curiel,* and *State v. Kienitz,* 227 Wis. 2d 423, 597 N.W.2d 712 (1999), are just a few such opinions. Although none of these cases determined whether the definition of "dangerous" should be confined to a specific timeframe, the issue was nonetheless conspicuous in all three. *Curiel* and *Kienitz* addressed whether the legislature's failure to define "substantially probable" rendered ch. 980 unconstitutionally vague. *See Curiel,* 227 Wis. 2d at 395; *Kienitz,* 227 Wis. 2d at 426–27. At the time the court decided these cases, "substantial probability" was part of the definition of dangerousness. *See Curiel,* 227 Wis. 2d at 394–95 (citing 1995–96 version of statutes); WIS. STAT. § 980.02(2)(c) (1993–94). The court in both cases not only upheld the statute but also rejected the appellant's challenge that the evidence did not support a finding of dangerousness. *See Curiel,* 227 Wis. 2d at 415, 419–20; *Kienitz,* 227 Wis. 2d at 427, 442. In rejecting the sufficiency of the evidence challenges, the court obviously had to apply the definition of dangerousness to the facts. The relevance of the timeframe for future dangerousness was therefore readily apparent, yet, nowhere in either discussion does the court refer to an "imminence" requirement. Rather, both opinions simply make abstract references to "future dangerous-

ness" and "future acts of sexual violence." *See, e.g., Curiel*, 227 Wis. 2d at 420; *Kienitz*, 227 Wis. 2d at 435, 440.

¶ 8. Moreover, the *Kienitz* decision noted that two of the experts who testified at Kienitz's trial had based their conclusions in part on a measure called the violence risk assessment guide (VRAG), which they used to assess his risk of future dangerousness. *Kienitz*, 227 Wis. 2d at 430–31. Using the VRAG, both doctors made predictions about Kienitz's probability of reoffending within a ten-year timeframe. *Id.* One also made a prediction based on a seven-year interval. *Id.* at 430. The VRAG clearly assessed dangerousness over a period longer than the "immediate" or "imminent" future; yet, the court expressed no consternation at this fact. Instead, it simply noted that the circuit court had found the testimony of the experts to be "useful and informative." *Id.* at 442. Given the foregoing, we have grave doubts that the supreme court would read an "imminence" requirement into WIS. STAT. ch. 980.

¶ 9. The third case, *Post*, upheld many provisions of WIS. STAT. ch. 980 against substantive due process and equal protection challenges. Significantly, the court rejected a challenge that the nature and duration of the commitment bore no reasonable relationship to the purposes of commitment. *See Post*, 197 Wis. 2d at 313–17. The court acknowledged the potentially indefinite duration of the commitment, but observed that this duration was "intimately linked to treatment of [the committed person's] mental condition." *Id.* at 314. Noting the statutory provision for periodic mental examinations was designed to determine the ongoing need for commitment, the court continued:

> Commitment ends when the committed person no longer suffers from a mental disorder or when that

condition no longer predisposes him to commit acts of sexual violence. Protection of the community is also well-served by this statutory scheme because the danger to the public has necessarily dissipated when treatment has progressed sufficiently to warrant an individual's release.

*Id.* The court obviously was not disturbed by the possibility of indefinite confinement, in light of these safeguards, even though the statute does not require the first periodic reexamination to occur until six months after an initial commitment and only requires subsequent reviews to take place once a year. *See* WIS. STAT. § 980.07(1). If due process required "imminent danger," we doubt that the court would have found acceptable the length of time between reviews.[3]

■

¶ 10. We now turn to Olson's contention that WIS. STAT. ch. 980 is impermissibly vague because it fails to limit itself to the "reasonably foreseeable future." Olson concedes that five to ten years constitutes a "reasonably foreseeable future" but complains that the State's expert also attempted longer-term predictions of dangerousness, namely fifteen years and Olson's lifetime. We do not see how any of these timeframes is necessarily a more "foreseeable" future. As we mentioned above, "[T]he only certain thing that can be said about the present state of knowledge and therapy regarding men-

---

[3] *See also Minnesota ex rel. Pearson v. Probate Court of Ramsey County*, 309 U.S. 270 (1940). In *Pearson*, the State conceded that commitment under the relevant statute was "without term and subject to the right of the patient, or any one interested in him, to petition the committing court for release at any time." *Id.* at 276. Although the court did not reach the issue, it did note that "[t]he applicable statutes are not patently defective in any vital respect." *Id.* at 277.

tal disease is that science has not reached finality of judgment." *See Post*, 197 Wis. 2d at 311 (citation omitted). What may be a "foreseeable" period based on one psychiatric assessment might differ from what is reasonably predictable using different methodologies. Moreover, each case has its own facts that might influence how far into the future one can predict a likelihood of dangerous behavior. The legislature had no obligation to ignore this reality.

¶ 11. Our supreme court has had many opportunities to invalidate WIS. STAT. ch. 980. We assume it has not done so because it does not find the statutory definition of "dangerous" objectionable. Moreover, in the context of WIS. STAT. ch. 51 commitments, it has rejected precisely the "imminence" requirement that Olson advocates. Because mentally disordered sex offenders present a much greater threat to the public than those committed under ch. 51, the State has an even greater interest in rejecting an "imminence" requirement in the ch. 980 context. We further hold that the statute is not vague just because the legislature did not limit the "foreseeable future" to an arbitrary period of time. We affirm.

*By the Court.*—Judgment and order and order affirmed.