STATE of Wisconsin,
Plaintiff-Appellant,

v.

David S. STENKLYFT,
Defendant-Respondent.

Supreme Court

*No. 2003AP1533–CR. Oral argument December 7, 2004.
—Decided June 9, 2005.*

2005 WI 71

(Also reported in 697 N.W.2d 769.)

486

For the plaintiff-appellant the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-respondent there was a brief and oral argument by *Suzanne L. Hagopian, assistant state public defender.*

¶ 1. JON P. WILCOX, J. This case is before the

court on a motion to bypass, pursuant to Wis. Stat. § 808.05 (2003–04)[1] and Wis. Stat. § (Rule) 809.60. The State appeals from a Dane County Circuit Court, Daniel R. Moeser, Judge, order, granting the petition of the defendant, David Stenklyft, for sentence adjustment under Wis. Stat. § 973.195 and an order denying the State's motion for reconsideration.

## I. ISSUES

¶ 2. The State asserts that the circuit court proceeded under an incorrect theory of law in granting Stenklyft's petition. The following issues are presented on appeal: 1) Does § 973.195 apply to inmates who were sentenced under the first phase of Truth-in-Sentencing (TIS-I), enacted by 1997 Wis. Act 283?; 2) If so, was Stenklyft's petition premature?; 3) If Stenklyft's petition was timely filed, was the circuit court nonetheless required to deny Stenklyft's petition under Wis. Stat. § 973.195(1r)(c) because the prosecutor objected to the petition?; 4) If the circuit court was required to deny the petition based on the prosecutor's objection, does § 973.195(1r)(c) violate the separation of powers doctrine or procedural due process?; and 5) If the prosecutorial veto power is unconstitutional, is § 973.195(1r)(c) severable from the remainder of § 973.195?

¶ 3. We conclude, in accordance with *State v. Tucker*, 2005 WI 46, ¶¶ 22–24, 279 Wis. 2d 697, 694 N.W.2d 926, that § 973.195 applies to inmates sentenced under TIS-I and that the felony classification system employed by the second phase of Truth-in-Sentencing (TIS-II), under Wis. Stat. § 939.50, should be utilized to

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

determine the "applicable percentage" of the term of initial confinement an inmate sentenced under TIS-I must serve in order to file a petition for sentence adjustment. That "applicable percentage" is then applied to the sentence originally imposed to determine if the inmate is eligible to file a petition under Wis. Stat. § 973.195(1g). *Id.,* ¶ 23. Because the crime for which Stenklyft was convicted is now classified as a Class F felony and there is no dispute that he served 75 percent of the initial confinement portion of his sentence, we conclude that his petition for sentence adjustment was not premature under § 973.195(1g).

¶ 4. In addition, we hold that the plain language of § 973.195 requires the circuit court to dismiss the petition upon the objection of the district attorney. Finally, we conclude that § 973.195 is not unconstitutional. Section 973.195 does not violate the separation of powers doctrine because it does not intrude upon the judiciary's inherent power to modify sentences. Rather, the statute allows for early release by creating a new power of sentence adjustment that is shared among all three governmental branches. The legislature is entitled to grant the judiciary new discretionary authority subject to enumerated conditions. The legislature, through § 973.195, simply has provided courts with a discretionary power they previously did not have that is subject to certain conditions precedent.

¶ 5. Furthermore, § 973.195 does not violate procedural due process because an inmate has no protected liberty interest in early release from prison through sentence adjustment. The statute creates no legitimate expectation of sentence adjustment because the circuit court's decision to grant sentence adjustment is purely discretionary under the statute and Stenklyft is not *entitled* to sentence adjustment under any set of facts.

¶ 6. Therefore, because we determine § 973.195 is constitutional and the district attorney vetoed Stenklyft's petition, we reverse the decision of the circuit court granting his petition for early release and its decision denying the State's motion for reconsideration.[2]

## II. STANDARD OF REVIEW

¶ 7. In this case we are called upon to interpret § 973.195 and determine whether certain portions of it are unconstitutional. Statutory interpretation is a question of law that we review de novo. *Columbus Park Hous. Corp. v. City of Kenosha,* 2003 WI 143, ¶ 9, 267 Wis. 2d 59, 671 N.W.2d 633. The applicable standards for interpreting statutes have been discussed at length in numerous recent cases and need not be set forth in full. It is sufficient to say that our goal in interpreting statutory provisions is to give effect to the intent of the legislature, which we assume is expressed in the text of

---

[2] The concurrences/dissents are the opinion of the majority of the court. It is possible that this matter is moot, as Stenklyft petitioned for sentence adjustment with two months remaining on his initial term of confinement and, according to his sentence, should be on extended supervision at the time this opinion is released. However, the parties did not argue mootness before this court. On remand, any sentence modification must be made in conformity with Wis. Stat. § 973.195(1r)(g). As Stenklyft did not have grounds for sentence adjustment under § 973.195(1r)(b)3., the circuit court would be limited under § 973.195(1r)(g)1. to reducing *"the term of confinement in prison by the amount of time remaining in [Stenklyft's] term of confinement in prison portion of [his] sentence . . . and [] corresponding[ly] increase[ing] . . . the term of extended supervision."* (Emphasis added.)

the statute. *State ex rel. Kalal v. Dane County Cir. Ct.,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. To this end, absent ambiguity in a statute, we do not resort to extrinsic aids of interpretation and instead apply the plain meaning of the words of a statute in light of its textually manifest scope, context, and purpose. *Id.,* ¶¶ 45–46. A statute is ambiguous if it is susceptible to more than one reasonable understanding. *Id.,* ¶ 47. If a statute is ambiguous, we may examine extrinsic sources in order to guide our interpretation. *Id.,* ¶ 50.

¶ 8. Regarding the constitutionality of § 973.195, "[t]he statute is presumed constitutional. A court will strike down a statute only when it is shown to be unconstitutional beyond a reasonable doubt." *Panzer v. Doyle,* 2004 WI 52, ¶ 65, 271 Wis. 2d 295, 680 N.W.2d 666 (citing *State ex rel. Friedrich v. Dane County Cir. Ct.,* 192 Wis. 2d 1, 13, 531 N.W.2d 32 (1995)). Further, "[w]here the constitutionality of a statute is at issue, courts attempt to avoid an interpretation that creates constitutional infirmities. Courts must apply a limiting construction to a statute, if available, to eliminate the statute's overreach, while maintaining the legislation's constitutional integrity." *Id.* (citations omitted). This court must "indulge every presumption in order to preserve the constitutionality of a legislative enactment." *Friedrich,* 192 Wis. 2d at 24.

### III. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 9. On August 14, 2000, the State filed a criminal complaint against Stenklyft, charging him with one count of causing great bodily harm by operating a motor vehicle while under the influence of an intoxi-

cant, contrary to Wis. Stat. § 940.25(1)(a) (1999–2000), and one count of causing great bodily harm by operating a motor vehicle with a prohibited alcohol concentration, contrary to Wis. Stat. § 940.25(1)(b) (1999–2000). An information was filed on October 17, 2000, alleging the same.

¶ 10. Subsequently, Stenklyft entered a plea of no contest to the charge of causing great bodily harm by operating a motor vehicle while under the influence of an intoxicant, and the State dismissed the remaining charge. Stenklyft was convicted of violating § 940.25(1)(a) (1999–2000) on November 27, 2000. The circuit court sentenced Stenklyft to two years and six months initial confinement and five years extended supervision, for a total term of imprisonment of seven and one-half years. Stenklyft challenged the effectiveness of his counsel at sentencing, and the court of appeals summarily affirmed the sentence in an unpublished opinion.

¶ 11. By letter dated March 5, 2003, Stenklyft petitioned the circuit court for sentence adjustment under Wis. Stat. § 973.195.[3] Stenklyft noted that he had served over 75 percent of his sentence and had not received a conduct report.[4] In addition, he cited his success in completing alcohol treatment programs, his extensive community service and volunteer work while in prison, and his work with other inmates as reasons for his adjustment request. *See* Wis. Stat. § 973.195(b)(1). Stenklyft also noted that he intended to continue his volunteer and community work after release.

---

[3] Stenklyft's letter incorrectly cited "state statute 973.95."

[4] As of the date of his petition, Stenklyft had served a total of one year, ten months, and 25 days in confinement.

¶ 12. At the hearing on the petition, the State objected to Stenklyft's early release and argued that his good behavior would not qualify as a "new factor" and thus should not form the basis for sentence adjustment under § 973.195. The State noted that while Stenklyft had been a model prisoner, his behavior and efforts at rehabilitation were what is expected of prisoners. Further, the State argued that Stenklyft's original sentence was "somewhat on the low side in terms of confinement initially, based on primarily the seriousness of the nature of the offense being terribly serious, [the victim] losing a leg and so on." In addition, the State brought to the court's attention that it had a right to unilaterally veto the petition, and that its veto should automatically terminate the petition.

¶ 13. The circuit court discussed concerns it had with the sentence adjustment provision:

> But I think a lot of judges around the state view this law with some skepticism . . . because there are no standards in the statutes that tell us what we're supposed to be looking at.
>
> I think there is a lot of concern about the absolute veto that a prosecutor's office has, no matter what someone has done in prison. . . .
>
> . . . .
>
> There are some who feel that the statute giving the prosecution absolute veto is unconstitutional, which may invalidate other parts of the Truth in Sentencing laws, while some think just the statute that gives the DA veto is the part that should be stricken as unconstitutional. I'm not reaching those issues today, except to say I don't believe the district attorney can have absolute one hundred percent veto over these cases. There would be no reason to have a provision to file

petitions if there was absolute veto. It seems to me there have to be some reasons for the various positions that people take.

¶ 14. Discussing the merits of the petition, the circuit court stated:

But it seems to me you have done very well in prison. You have apparently taken advantage of all the opportunities available to you and gone beyond what you had to do to try to rehabilitate yourself, but also, to provide some use to the community to keep things like this from happening again.

The circuit court concluded: "[b]ut as I read your petition, I'm thinking if you're not a person that's entitled to early release based on what they've done in prison, who is?" Therefore, the circuit court granted Stenklyft's petition and directed that he be released on August 1, 2003.

¶ 15. The State filed a motion to reconsider, arguing that § 973.195 applied only to crimes committed after February 1, 2003—crimes governed by TIS-II. A hearing on the motion was held June 6, 2003. After a discussion as to whether § 973.195 applies to TIS-I offenders, the circuit court affirmed its earlier decision, concluding: "And I can't think of a reason that the law would not apply to Mr. — the new law, the early release law should apply to Mr. Stenklyft as well as anybody else sentenced under either TIS I or TIS II, as long as the crime qualifies." The State appealed from the circuit court's initial decision granting Stenklyft's petition for sentence adjustment and its decision denying the State's motion for reconsideration. This court granted the State's motion to bypass on May 14, 2004.

## IV. ANALYSIS

### A.

¶ 16. As is well known by the bench and bar in this state, Wisconsin enacted its determinate sentencing scheme, Truth-in Sentencing, in two phases. "The first phase, TIS-I, was enacted in June 1998 and applied to offenses committed on or after December 31, 1999. *See* 1997 Wis. Act 283. The second phase, TIS-II, was enacted in July 2002 and became effective February 1, 2003. *See* 2001 Wis. Act 109." *State v. Gallion,* 2004 WI 42, ¶ 7, n.3, 270 Wis. 2d 535, 678 N.W.2d 197. *See also State v. Cole,* 2003 WI 59, ¶ 4, 262 Wis. 2d 167, 633 N.W.2d 700. The main feature of TIS-I was § 973.01(1) (1999–2000), under which "a circuit court was required to impose a bifurcated sentence consisting of a term of confinement in prison followed by a term of extended supervision whenever it sentence[d] a person to 'imprisonment in the Wisconsin state prisons.' " *Cole,* 262 Wis. 2d 167, ¶ 16.

¶ 17. Furthermore, pursuant to Wis. Stat. §§ 973.01(4) and (6) (1999–2000), TIS-I established that "those serving a bifurcated sentence were not eligible for parole," and eliminated the possibility for a reduction in confinement time for good behavior. *State v. Trujillo,* 2005 WI 45, ¶ 4, 279 Wis. 2d 712, 694 N.W.2d 933. Thus, " '[w]ith limited exceptions, § 973.01 removed all statutory provisions that might serve to reduce an inmate's confinement based on the inmate's rehabilitation.' " *Id.* (quoting *State v. Champion,* 2002 WI App 267, ¶ 7, 258 Wis. 2d 781, 654 N.W.2d 242). One result of the determinate sentencing scheme of TIS-I was that inmates sentenced under TIS-I generally served longer periods of confinement in prison than

inmates sentenced under the old indeterminate scheme, as inmates subject to the indeterminate system were entitled to mandatory release after serving two-thirds of their sentence. *See* Wis. Stat. § 302.11 (1999–2000).

¶ 18. It has been recognized that TIS-I was not a completed work when passed:

> The legislature established an 18–month window between the date TIS-I was passed and the date it was to go into effect in order to give the newly established Criminal Penalties Study Committee (CPSC) time to supplement and complete the existing legislation. While the CPSC timely completed its task, producing a lengthy report and statutory proposals for full implementation of truth-in-sentencing, the legislature failed to enact the proposals before TIS-I went into effect.

*Cole,* 262 Wis. 2d 167, ¶ 41 (footnote omitted). Instead,

> During the next two and one-half years, the assembly and senate each passed bills that largely tracked the CPSC's recommendations, but differences between those bills were never reconciled. Finally, during a special session called by Gov. McCallum in 2002 to deal with Wisconsin's budget crisis, both legislative houses agreed on budget adjustment legislation that included nearly all of the CPSC's proposals. On July 26, 2002, the governor signed [2001 Wis. Act 109] into law.

Michael B. Brennan et al., *Fully Implementing Truth-in-Sentencing,* Wisconsin Lawyer, Nov. 2002, at 12.

¶ 19. TIS-II made several modifications to TIS-I, three of which are pertinent to this appeal. First, TIS-II adopted a new nine-category A-I system of classifying felonies. Wis. Stat. § 939.50. *Cf.* Wis. Stat. § 939.50 (1999–2000)(classifying felonies into six categories: A, B, BC, C, D, & E). Although almost all previously

unclassified felonies were classified under the new system, "[a] few offenses remain unclassified, even after Act 109, due to oversight or the vagaries of the legislative process." Michael B. Brennan et al., *Fully Implementing Truth-in-Sentencing,* Wisconsin Lawyer, Nov. 2002, at 47.

¶ 20. Second, as part of the reclassification, Act 109 adjusted the length of the initial term of confinement for crimes, because "[t]he CPSC concluded that the maximum initial term of confinement for each crime in the new truth-in-sentencing system ought to roughly parallel the maximum the person could serve in prison before reaching MR under the indeterminate sentencing law that preceded [TIS-I]." *Id.* at 12. As a result of this change and the delay between TIS-I and TIS-II, "defendants convicted of felonies between December 31, 1999, and February 1, 2003, generally serve longer periods of confinement than the maximum provided for in TIS-II." *Trujillo,* 279 Wis. 2d 712, ¶ 6.

¶ 21. Finally, TIS-II created a number of methods for adjusting and modifying a bifurcated sentence, including mechanisms for allowing an inmate to be released early from prison. *See* Wis. Stat. § 302.113(7m) (allowing an inmate to petition the sentencing court to modify the conditions of extended supervision set by the court); Wis. Stat. § 302.113(9g) (allowing an inmate to petition for release from initial confinement based on age or terminal illness); Wis. Stat. § 973.195 (allowing inmates to petition for sentence adjustment under certain conditions). These provisions create additional procedures for adjusting a bifurcated sentence but do not alter or affect a circuit court's inherent power to modify a sentence based on "new factors" or other established common-law grounds. Michael B. Brennan

et al., *Fully Implementing Truth-in-Sentencing,* Wisconsin Lawyer, Nov. 2002, at 53.[5]

¶ 22. TIS-II went into effect February 1, 2003. 2001 Wis. Act 109, § 9459. However, by virtue of the "Initial applicability" provisions of 2001 Wis. Act 109, § 9359, certain enumerated provisions of TIS-II first apply to crimes committed on or after February 1, 2003.

¶ 23. Unlike many of the provisions of TIS-II, § 973.195 was not proposed by the CPSC. Michael B. Brennan et al., *Fully Implementing Truth-in-Sentencing,* Wisconsin Lawyer, Nov. 2002, at 54, n.80. "Rather, it was devised by senate and assembly budget negotiators during the final stages of the 2002 special session of the legislature." *Id.* A similar but much broader provision was proposed by the Criminal Law Section of the State Bar but was never adopted. John A. Birdsall & Raymond M. Dall'Osto, *Problems with the New Truth-in-Sentencing Law,* Wisconsin Lawyer, Nov. 2002, at 13.

¶ 24. Section 973.195 allows an inmate serving a bifurcated sentence pursuant to § 973.01 to petition the sentencing court to adjust his sentence if he has served the "applicable percentage" of his initial term of confinement.[6] Wis. Stat. § 973.195(1r). However, the text of the provision explicitly excludes inmates convicted of

---

[5] However, in *State v. Trujillo,* 2005 WI 45, ¶ 2, 279 Wis. 2d 712, 694 N.W.2d 933, this court reaffirmed that courts should continue to apply existing new factor jurisprudence in the aftermath of truth-in-sentencing.

[6] As recognized by those involved in the development of TIS-II, "Wis. Stat. Section 973.195 does not provide an offender with a statutory right to counsel when filing such a petition." Michael B. Brennan et al., *Fully Implementing Truth-in-Sentencing,* Wisconsin Lawyer, Nov. 2002, at 54.

Class B felonies. *Id.*[7] The "applicable percentage" of the initial term of confinement varies depending on the classification of the felony for which the inmate was convicted. In order to be eligible for a sentence adjustment, an inmate convicted of a Class C to E felony must have completed 85 percent of his initial term of confinement, whereas an inmate convicted of a Class F to I felony must have completed 75 percent of the term of his initial confinement.[8]

¶ 25. However, an inmate who has completed the "applicable percentage" of his initial term of confinement is not entitled to an automatic sentence adjustment; rather, he must establish one of the grounds specified in Wis. Stat. § 973.195(b). This section provides:

> Any of the following is a ground for petition under par. (a):
>
> 1. The inmate's conduct, efforts at and progress in rehabilitation, or participation and progress in education, treatment, or other correctional programs since he or she was sentenced.

---

[7] Section § 973.195(1r) provides:

Confinement In Prison. (a) An inmate who is serving a sentence imposed under s. 973.01 for a crime other than a Class B felony may petition the sentencing court to adjust the sentence if the inmate has served at least the applicable percentage of the term of confinement in prison portion of the sentence. If an inmate is subject to more than one sentence imposed under this section, the sentences shall be treated individually for purposes of sentence adjustment under this subsection.

[8] Section 973.195(1g) provides: "Definition. In this section, 'applicable percentage' means 85% for a Class C to E felony and 75% for a Class F to I felony." Thus, sentence adjustment is also unavailable for Class A felons (who are subject to a penalty of life imprisonment under Wis. Stat. § 939.50(3)).

3. A change in law or procedure related to sentencing or revocation of extended supervision effective after the inmate was sentenced that would have resulted in a shorter term of confinement in prison or, if the inmate was returned to prison upon revocation of extended supervision, a shorter period of confinement in prison upon revocation, if the change had been applicable when the inmate was sentenced.

4. The inmate is subject to a sentence of confinement in another state or the inmate is in the United States illegally and may be deported.

5. Sentence adjustment is otherwise in the interests of justice.

Wis. Stat. § 973.195(1r)(b).

¶ 26. The statute then sets forth the procedure by which a circuit court may consider the petition and allows the district attorney (and sometimes the victim)[9] to object to the petition:

Upon receipt of a petition filed under par. (a), the sentencing court may deny the petition or hold the petition for further consideration. If the court holds the petition for further consideration, the court shall notify the district attorney of the inmate's petition. If the district attorney objects to adjustment of the inmate's sentence within 45 days of receiving notification under this paragraph, the court shall deny the inmate's petition.

Wis. Stat. § 973.195(1r)(c). Next, the statute describes the circumstances under which the circuit court may grant the petition:

If the sentencing court receives no objection to sentence adjustment from the district attorney under

---

[9] Wis. Stat. § 973.195(1r)(d).

par. (c) or the victim under par. (d) and the court determines that sentence adjustment is in the public interest, the court may adjust the inmate's sentence as provided under par. (g). The court shall include in the record written reasons for any sentence adjustment granted under this subsection.

Wis. Stat. § 973.195(1r)(f). As such, § 973.195(1r)(c) & (f) seemingly allow the district attorney to unilaterally veto an inmate's petition without providing any explanation therefor.

¶ 27. If the circuit court grants the petition for sentence adjustment, it may change the structure of the inmate's sentence only as provided by statute.[10] Finally,

---

[10] (g) Except as provided under par. (h), the only sentence adjustments that a court may make under this subsection are as follows:

1. If the inmate is serving the term of confinement in prison portion of the sentence, a reduction in the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days, and a corresponding increase in the term of extended supervision.

2. If the inmate is confined in prison upon revocation of extended supervision, a reduction in the amount of time remaining in the period of confinement in prison imposed upon revocation, less up to 30 days, and a corresponding increase in the term of extended supervision.

(h) 1. If the court adjusts a sentence under par. (g) on the basis of a change in law or procedure as provided under par. (b)3. and the total sentence length of the adjusted sentence is greater than the maximum sentence length that the offender could have received if the change in law or procedure had been applicable when the inmate was originally sentenced, the court may reduce the length of the term of extended supervision so that the total sentence length does not exceed the maximum sentence length of that the offender could have received if the change in law or procedure had been applicable when the inmate was originally sentenced.

an inmate is allowed to submit only one petition for each sentence imposed under truth-in-sentencing. Wis. Stat. § 973.195(1r)(i).[11]

**B.**

■■■■

¶ 28. The first question we must address is whether § 973.195 applies to inmates who were sentenced under TIS-I. In *Tucker,* this court held that § 973.195 applies to inmates sentenced under TIS-I and determined that the felony classification system employed by TIS-II, under § 939.50, should be utilized to

---

2. If the court adjusts a sentence under par. (g) on the basis of a change in law or procedure as provided under par. (b)(3). and the adjusted term of extended supervision is greater than the maximum term of extended supervision that the offender could have received if the change in law or procedure had been applicable when the inmate was originally sentenced, the court may reduce the length of the term of extended supervision so that the term of extended supervision does not exceed the maximum term of extended supervision that the offender could have received if the change in law or procedure had been applicable when the inmate was originally sentenced.

Wis. Stat. § 973.195(1r)(g)-(h).

[11] Section 973.195(1r)(i) provides: " An inmate may submit only one petition under this subsection for each sentence imposed under s. 973.01." Furthermore, as commentators have recognized, an inmate does not have a statutory right to appeal the denial of a petition. Michael B. Brennan et al., *Fully Implementing Truth-in-Sentencing,* Wisconsin Lawyer, Nov. 2002, at 55. *See also* Wis. Stat. § 809.30(1)(c) (excluding petitions for sentence adjustment under § 973.195 from the definition of post-conviction relief); Legislative Reference Bureau, *Wisconsin Briefs 02–7: Truth-in-Sentencing and Criminal Code Revision,* August 2002 at 5 ("There is no provision for appeal of denial of the petition.").

determine the "applicable percentage" of the term of initial confinement an inmate sentenced under TIS-I must serve in order to file a petition for sentence adjustment. Tucker, 279 Wis. 2d 697, ¶¶ 22–24. That "applicable percentage" is then applied to the sentence originally imposed to determine if the inmate is eligible to file a petition under § 973.195(1g). *Id.,* ¶ 23.

¶ 29. Stenklyft was convicted of causing great bodily harm by operating a motor vehicle while under the influence of an intoxicant, contrary to § 940.25(1)(a) (1999–2000). At the time he was convicted, his offense was classified as a Class D felony. Wis. Stat. § 940.25(1) (1999–2000). However, under TIS-II, the crime for which Stenklyft was convicted is now a Class F felony. Wis. Stat. § 940.25(1)(a). Thus, while Stenklyft remains convicted of a Class D felony, for purposes of determining what "applicable percentage" of his term of initial confinement he must serve in order to be eligible for sentence adjustment, we look to how the crime for which he was convicted is currently classified under TIS-II.

¶ 30. Because the crime for which Stenklyft was convicted is now classified as a Class F felony, he must have served 75 percent of his initial confinement time in order to be eligible for sentence adjustment. Wis. Stat. § 973.195(1g). As there is no dispute that Stenklyft had completed 75 percent of the initial confinement portion of his sentence at the time his petition was filed, we hold that Stenklyft's petition in this case was not premature.

C.

¶ 31. Next, we address whether the circuit court is required to dismiss a petition for sentence adjust-

ment upon the objection of the district attorney. The prosecutorial veto is contained in two separate subsections of § 973.195. Section 973.195(1r)(c) requires the court to notify the district attorney of an inmate's petition for sentence adjustment if the court decides to hold the petition for further consideration. Section 973.195(1r)(c) then goes on to provide that "[i]f the district attorney objects to adjustment of the inmate's sentence within 45 days of receiving notification under this paragraph, *the court shall deny the inmate's petition.*" Wis. Stat. § 973.195(1r)(c) (emphasis added). Next, subsection (1r)(f), which governs the circumstances under which the court may grant the petition, provides: "*If the sentencing court receives no objection to sentence adjustment from the district attorney* under par. (c) or the victim under par. (d) and the court determines that sentence adjustment is in the public interest, the court may adjust the inmate's sentence as provided under par. (g)." Wis. Stat. § 973.195(1r)(f) (emphasis added).

¶ 32. The operation of § 973.195(1r)(c) and (f) thus purportedly grants the prosecutor a unilateral, absolute veto over a petition for sentence adjustment by requiring the court to dismiss the petition if the prosecutor objects and by conditioning the ability of the court to grant the petition on the absence of objection from the prosecutor. While some may argue that we could avoid addressing the constitutionality of § 973.195 by reading limiting language into the statute, this is not the case.

¶ 33. Specifically, it has been suggested that the court could read "shall" in § 973.195(1r)(c) as "may," thus rendering the provision directory. However, there are two problems with this approach. First, this court has clearly stated that the word "shall" in a statute is

presumed to be mandatory, especially where the legislature uses the words "shall" and "may" in the same statutory section. *State v. Sprosty,* 227 Wis. 2d 316, 324–25, 595 N.W.2d 692 (1999). Here, the statute provides: "Upon receipt of a petition filed under par. (a), the sentencing court *may* deny the petition. . . . If the district attorney objects to adjustment of the inmate's sentence . . . the court *shall* deny the inmate's petition." Wis. Stat. § 973.195(1r)(c) (emphasis added). In such circumstances, we presume that the legislature was aware of the different meanings of these words and intended these terms to be given their precise meaning. *Sprosty,* 227 Wis. 2d at 325.

¶ 34. Second, reading "shall" as "may" in § 973.195(1r)(c) would not solve the problem. As noted, the prosecutorial veto is contained to two separate statutory sections. In addition to the provision in § 973.195(1r)(c), § 973.195(1r)(f) provides that a court may grant a petition for sentence adjustment only if it determines that sentence adjustment is in the public interest and *"[i]f the sentencing court receives no objection to sentence adjustment from the district attorney[.]"* (Emphasis added.)

¶ 35. Moreover, it is this court's duty to "apply [a] statute as written, not interpret it as we think it should have been written." *Columbus Park Hous. Corp.,* 267 Wis. 2d 59, ¶ 34. Here, the legislature has allowed the circuit court the discretion to dismiss a petition for sentence adjustment outright. Also, it has provided the court with discretion to grant the petition if it determines it is in the public interest to do so. However, the legislature has clearly conditioned the court's discretionary power in the second instance upon the district attorney not objecting to the petition. Therefore, we conclude that the plain language of § 973.195(1r)(c) &

(f) requires a circuit court to dismiss a petition for sentence adjustment upon the objection of the district attorney.

D.

¶ 36. We now turn and address the constitutionality of § 973.195. Stenklyft argues that § 973.195 violates the separation of powers doctrine because the prosecutorial veto intrudes upon the judiciary's inherent and exclusive power to modify sentences. Alternatively, he contends that the statute is unconstitutional because it substantially interferes with the judiciary's shared sentencing authority. For the reasons discussed below, we reject both arguments.

¶ 37. This court has frequently discussed the separation of powers doctrine.

> "The doctrine of separation of powers, while not explicitly set forth in the Wisconsin constitution, is implicit in the division of governmental powers among the judicial, legislative, and executive branches." . . . Each branch, separate but co-equal, is not subordinate to another, no branch to arrogate to itself control of the other.

*State v. Horn,* 226 Wis. 2d 637, 643, 594 N.W.2d 772 (1999) (quoting *Friedrich,* 192 Wis. 2d at 13). A separation of powers analysis involving judicial power has two steps. First, we must determine if the power allegedly intruded upon is "within the judiciary's core zone of exclusive power." *Id.* at 645. If so, then *"[a]ny* exercise of power by the legislature or executive branch within such an area is an unconstitutional violation of the separation of powers." *Id.* (emphasis added). If, on the other hand, the power at issue is "within an area of shared powers[,]" then a statute that relates to such

power "is constitutional if it does not unduly burden or substantially interfere with either branch." *Id.*

¶ 38. "It is well established that a circuit court has inherent authority to modify a sentence." *Trujillo,* 279 Wis. 2d 712, ¶ 10. "Courts have those inherent powers that are necessary 'to enable the judiciary to accomplish its constitutionally or legislatively mandated functions.' " *State v. Crochiere,* 2004 WI 78, ¶ 11, 273 Wis. 2d 57, 681 N.W.2d 524 (quoting *Friedrich,* 192 Wis. 2d at 162). However, even power that is inherent in the judiciary may be a shared power. *See Friedrich,* 192 Wis. 2d at 19–21 (examining whether the judiciary's inherent power to set compensation for court-appointed counsel is shared or exclusive and concluding such power is shared).

¶ 39. The parties disagree as to whether the judiciary's inherent authority to modify sentences is an exclusive or shared power. We need not reach this issue because even assuming, arguendo, that the power to modify sentences is an exclusive power of the judiciary, we conclude that § 973.195 does not relate to the judiciary's inherent power to modify a sentence. Rather, the statute creates a new, shared power that vests discretionary authority in the judiciary once certain conditions have been met.

¶ 40. We reach this conclusion for several reasons. First, the legislative history of § 973.195 supports this conclusion. As the statute itself is silent as to how it relates (if at all) to the judiciary's inherent power to modify a sentence, it is appropriate to examine legislative history to determine the legislative intent in enacting the provision.

¶ 41. The original version of 2001 Wis. Act 109, § 1143m, governing petitions for sentence adjustment, contained a provision stating: "Filing a petition under

this section does not affect a person's right to file a petition for sentence modification under s. 809.30 or 973.19 or to petition the sentencing court for sentence modification on the basis of a [']new factor.'" *See* Legislative Reference Bureau, *Jr2 Drafting Request: LRBb3085* (2001). While there is no indication in the legislative history of this provision as to why it was not included in the final bill, we believe the most logical reason the provision was removed is because it was deemed unnecessary and superfluous.

¶ 42. It is a cardinal rule of statutory construction that "this court must assume that the legislature knew the law in effect at the time of its actions." *State v. Olson,* 175 Wis. 2d 628, 641, 498 N.W.2d (1993). The inherent power of a court to modify sentences is well established under our common law, and this court has repeatedly defined the parameters within which that power can be exercised. *See Crochiere,* 273 Wis. 2d 57, ¶ 12. As explained *supra,* § 973.195(1r)(b) sets forth a limited number of bases upon which an inmate may file a petition for sentence adjustment. Two of these grounds are not legitimate bases upon which a circuit court may modify a sentence based on our common law "new factor" jurisprudence, and the final ground in § 973.195(1r)(b) is much broader than the traditional common-law test to determine whether a new factor is present. *Compare* § 973.195(1r)(b)1.-5. *with Crochiere,* 273 Wis. 2d 57, ¶¶ 14–17 (describing the test for a "new factor" and collecting cases concluding "new factors" were not present) and *State v. Hegwood,* 113 Wis. 2d 544, 548, 335 N.W.2d 339 (1983) (holding that a change in the law of sentencing does not constitute a "new factor").

¶ 43. Thus, if § 973.195 were construed as involving this court's inherent power to modify sentences, the

512

statute would have the practical effect of overruling several of our cases defining what constitutes a "new factor." However, it is black letter law that "an intent to change the common law must be clearly expressed" by the legislature when enacting a statute. *Gaugert v. Duve,* 2001 WI 83, ¶ 41, 244 Wis. 2d 691, 628 N.W.2d 861. As there is no clear intent expressed in § 973.195 to overturn this court's "new factor" jurisprudence, we must conclude that the statute does not relate to the judiciary's common-law power to modify sentences.

¶ 44. Also, the legislature specifically rejected a proposal by the Criminal Law Section of the State Bar that would have established a ground for sentence adjustment based on a "new factor." John A. Birdsall & Raymond M. Dall'Osto, *Problems with the New Truth-in-Sentencing Law,* Wisconsin Lawyer, Nov. 2002, at 13. In addition, we find it significant that § 973.195 is specifically titled "Sentence adjustment" rather than "Sentence modification."

¶ 45. Further, those intimately involved in the drafting of TIS-II have recognized that § 973.195 does not relate to the judiciary's inherent power to modify sentences:

> A Wisconsin circuit court possesses the inherent authority to modify a previously imposed sentence based on either new factors or a conclusion that the original sentence was "unduly harsh or unconscionable." *Act 109 does not alter an offender's right to seek sentence modification on these grounds. It does, however, create additional procedures for modifying a bifurcated sentence.*

Brennan et al., *Fully Implementing Truth-in-Sentencing,* Wisconsin Lawyer, Nov. 2002, at 53 (footnote omitted).

¶ 46. Moreover, while this court in *Trujillo* held that we will continue to apply existing new factor jurisprudence in the aftermath of TIS-II and § 973.195, we did not conclude in *Trujillo* that § 973.195 in any way *mandated* that we adhere to our existing jurisprudence. Rather, we recognized that " 'Wisconsin Stat. § 973.195 reflects the legislature's intent to create *a separate and specific statutory procedure for requesting a sentence reduction*' . . . ." *Trujillo,* 279 Wis. 2d 712, ¶ 24 (quoting *State v. Torres,* 2003 WI App 199, ¶ 9, 267 Wis. 2d 213, 670 N.W.2d 400). As such, contrary to the premise underlying the dissent, § 973.195 does not relate to the judiciary's inherent power to modify a sentence.

¶ 47. Finally, if we were to accept Stenklyft's position that § 973.195 relates to the judiciary's inherent power to modify sentences and that such power is an exclusive zone of judicial authority, we would be required to strike down the entire sentence adjustment statute, not just the prosecutorial veto sections. As noted, *"[a]ny* exercise of power by the legislature or executive branch within such an area is an unconstitutional violation of the separation of powers." *Horn,* 226 Wis. 2d at 645 (emphasis added). Section 973.195 contains many restrictions on the court's ability to grant sentence adjustment beyond simply securing the approval of the district attorney. As discussed previously, the statute: 1) requires that an inmate serve a certain portion of his sentence before petitioning for adjustment; 2) limits the grounds which he may assert; and 3) requires the court to find that adjustment is in the public interest in order to grant the petition. As all of these provisions limit a court's authority under the statute, we would be required to declare them all invalid if we were to accept Stenklyft's position.

¶ 48. Therefore, we conclude that § 973.195 does not relate to the judiciary's inherent authority to modify sentences. This court remains free to follow or alter its existing "new factor" jurisprudence as it sees fit.

¶ 49. However, Stenklyft argues that even if the statute does not relate to the judiciary's inherent power to modify sentences, it nonetheless impermissibly interferes with the judiciary's shared power in sentencing.

> If the subject matter of the statute is within the powers constitutionally granted to the judiciary and the legislature, the statute is within an area of shared powers. Such a statute is constitutional if it does not unduly burden or substantially interfere with either branch. "The focus of this evaluation is on whether one branch's exercise of power has impermissibly intruded on the constitutional power of the other branch."

*Horn,* 226 Wis. 2d at 645 (citations omitted)(quoting *Friedrich,* 192 Wis. 2d at 15).

¶ 50. Stenklyft is correct that the judiciary's sentencing power is among its shared constitutional powers. *Id.,* at 644–46. " 'It is the function of the legislature to prescribe the penalty and the manner of its enforcement; the function of the courts to impose the penalty; while it is the function of the executive to grant paroles and pardons.' " *State v. Borrell,* 167 Wis. 2d 749, 767, 482 N.W.2d 883 (1992)(quoting *Drewniak v. State ex rel. Jacquest,* 239 Wis. 475, 488, 1 N.W.2d 899 (1942)).[12] Yet, once a criminal sentence becomes final, the court's

---

[12] "Thus, the sentencing court is required to exercise discretion to fashion a sentence[] within the range provided by the legislature . . . ." *State v. Borrell,* 167 Wis. 2d 749, 765, 482 N.W.2d 883 (1992). Furthermore, this court has clearly held that "[t]he legislature has authority to determine the scope of

515

power to impose a sentence is at an end. "[O]nce a defendant has been charged with a crime, tried, defended, convicted, sentenced, and gone through an appeal if desired, the litigation is over and the judicial process has ended. . . . The judiciary phase of the criminal process—imposing a penalty—is complete." *Horn,* 226 Wis. 2d at 650.

¶ 51. However, section 973.195 does not affect a court's power to fashion a sentence in the first instance. Rather, it establishes the prerequisites to the exercise of the court's discretion when deciding to grant a petition for "sentence adjustment" *after* the court has already imposed a criminal disposition and such disposition has become final.[13] In other words, § 973.195 allows the court to grant reprieve from a sentence already imposed.

¶ 52. Stenklyft has not identified any constitutional provision that vests the power of "sentence adjustment" in the judiciary. Rather, similar to other discretionary powers of the judiciary, the authority to grant a "sentence adjustment" springs solely from the statutes. *See Horn,* 226 Wis. 2d at 648 ("Without [statutory] authority, a court could not place a defendant on probation.").

---

the sentencing court's discretion." *State v. Horn,* 226 Wis. 2d 637, 646, 594 N.W.2d 772 (1999).

[13] We disagree with Stenklyft that § 973.195 represents a "reactivation" of the court's sentencing powers in the first instance. Section 973.195(1r)(g)-(h) limits the types of "adjustments" that can be made to an inmate's sentence. Additionally, while § 973.195(1r)(f) requires the court to provide written reasons for granting a sentence adjustment, it does not prescribe the same detailed rationale that is required when a court sentences a defendant in the first instance.

¶ 53. " 'It is within the legislative power to give the courts discretionary powers, when certain conditions have been judicially determined to exist, *or to direct the court's action in the premises without discretion.*' " *State v. Lindsey,* 203 Wis. 2d 423, 441, 554 N.W.2d 215 (Ct. App. 1996)(quoting *Jones v. Manesewitz,* 267 Wis. 625, 633, 66 N.W.2d 732 (1954)(emphasis provided by *Lindsey*). *See also Borrell,* 167 Wis. 2d at 768 (same). Here, the legislature has provided the courts with discretionary authority to grant a petition for sentence adjustment if certain conditions exist: 1) the inmate has served the "applicable percentage" of his sentence; 2) the inmate asserts one of the statutory grounds for adjustment; 3) the district attorney does not object to the petition; and 4) the court determines it is within the public interest to grant the petition. In addition, when the district attorney does object, the legislature has simply " '*direct[ed] the court's action in the premises without discretion.*' " *Lindsey,* 203 Wis. 2d at 441 (quoting *Jones,* 267 Wis. at 633).[14]

¶ 54. We note that the focus of Stenklyft's separation of powers challenge is on the power the legislature has provided to the executive branch to veto a petition for sentence adjustment. The main feature of § 973.195 is that it allows an inmate to petition for early release

---

[14] In *State v. Lindsey,* 203 Wis. 2d 423, 441, 554 N.W.2d 215 (Ct. App. 1996), the court of appeals upheld Wisconsin's "three-strikes" law in the face of a separation of powers challenge. The defendant argued that the "legislature's grant of sole sentencing discretion to the prosecution violates the separation of powers doctrine . . . ." *Id.* at 439. The court of appeals rejected this challenge, noting "there is no inherent power of the judiciary to absolutely determine the nature of the punishment." *Id.* at 441 (citing *State v. Sittig,* 75 Wis. 2d 497, 499–500, 249 N.W.2d 770 (1977)).

from prison through sentence adjustment. We agree with the State that § 973.195 is somewhat analogous to the old system of parole in that it provides a mechanism for early release from prison. While we are cognizant that the purpose of truth-in-sentencing was to abolish parole and that the function of the circuit court under § 973.195 is not the equivalent of the parole board, we nonetheless find the analogy to be appropriate, given the nature of the power at issue. Specifically, while the mechanisms of parole and sentence adjustment are surely different, they both serve the same purpose: to allow inmates early release from prison once they have begun to serve their sentences. *See* Legislative Reference Bureau, *Wisconsin Briefs 02–7: Truth-in-Sentencing and Criminal Code revision* 4 (Aug. 2002) (noting that inmates sentenced under the old indeterminate system may not petition for sentence adjustment because they are eligible to be released early through parole).

¶ 55. Historically, the power to grant an inmate reprieve from his sentence was a purely executive function.

> In Wisconsin's early years of statehood, all criminal sentences were for definite periods of time and were to be fully served. Early discharge for rehabilitation or for good behavior was unknown. In fact, the only reward for good behavior was a lack of further punishment. There existed one method of early release and that was through the use of the executive pardon power by the Governor.

Wisconsin Legislative Council, *Information Memorandum 78–43: The Wisconsin Parole Board,* Sept. 18, 1978. The legislature later created an executive agency empowered to grant paroles. *Id.* While the legislature abolished parole under TIS-I, it created several new

mechanisms for early release in TIS-II, including § 973.195.[15] *See, e.g.,* § 302.113(9g) (allowing inmates to obtain early release based on age or deteriorated physical condition).

¶ 56. The ability to obtain early release under the system of parole existed solely as a matter of legislative grace: "The legislature not only can specify when a person convicted of a particular crime may be eligible for parole but can also disallow or abolish the right to parole for any or all crimes." *Borrell,* 167 Wis. 2d at 764. Likewise, the legislature has no constitutional obligation to provide courts with the power of "sentence adjustment;" it could repeal the statute tomorrow. In other words, the legislature gave the judiciary a discretionary power it does not otherwise possess. As such, the legislature is entitled to specify under what conditions a court is able to exercise its discretionary power and grant an inmate's petition for sentence adjustment.

¶ 57. In enacting § 973.195, the legislature created a new mechanism for obtaining early release from prison. In doing so, it created a system whereby power is shared among the three branches. Under § 973.195, the legislature sets the threshold requirements for sentence adjustment by defining what crimes are subject to sentence adjustment and prescribing the length of time an inmate must serve before being eligible for sentence adjustment. The executive branch retains its historical power to grant early release from prison, as

---

[15] We emphasize that we do not purport to hold that sentence adjustment is the equivalent of parole. We merely recognize that both sentence adjustment and parole are legislative mechanisms designed to afford an inmate reprieve from his sentence by granting him early release. The statutory mechanisms are different, but the nature of the power involved is similar.

the executive, through the district attorney, has the right to object and veto any petition for sentence adjustment. The legislature has vested the courts with new discretionary power to grant a sentence adjustment if the district attorney does not object: "If the sentencing court receives no objection to sentence adjustment from the district attorney . . . and the court determines that sentence adjustment is in the public interest, the court *may* adjust the inmate's sentence as provided under par. (g)." Wis. Stat. § 973.195(1r)(f) (emphasis added). Thus, the approval of the district attorney is but one of the many prerequisites the legislature has provided before the court may exercise its new discretionary power.

¶ 58. Given that the legislature is entitled to place "reasonable regulation[s]" on inherent judicial power that cannot be withdrawn, *Horn,* 226 Wis. 2d at 651, we cannot conclude that setting conditions precedent for the exercise of a power that *can be* withdrawn is unconstitutional. Therefore, we conclude that the prosecutorial veto provisions in § 973.195 do not violate the separation of powers doctrine.[16]

---

[16] We note that a court in Indiana addressing a similar statute reached the same conclusion:

> By the present statute, the jurisdiction of the sentencing court to modify the sentence remains but the court had no authority to render the particular modification of [the inmate's] sentence because 365 days had passed since he had begun to serve his sentence and the prosecuting attorney had not approved the modification. The legislature was free, through the statute, to give the trial court authority to render a modification of the sentence with whatever conditions and within whatever time it deemed appropriate. The legislature chose to subject the authority to reduce or suspend a sentence to the approval of the prosecuting attorney if 365 days had passed. Even though the authority to modify is subject to such a condition, the statute does not take

¶ 59. We again emphasize that the power to grant a petition for sentence adjustment under § 973.195 is a power entirely separate and distinct from the judiciary's inherent power to modify sentences, despite the fact that the end result of the exercise of each power may be similar. Section 973.195 "reflects the legislature's intent to create *a separate and specific statutory procedure for requesting a sentence reduction . . . .*" *Trujillo,* 279 Wis. 2d 712, ¶ 25 (quoting *Torres,* 267 Wis. 2d 213, ¶ 9) (emphasis added). Thus, the fact that a district attorney vetoes a petition for sentence adjustment in no way affects a court's inherent power to modify a sentence.

¶ 60. A circuit court has the inherent power to modify a sentence based upon a showing of a new factor. *Trujillo,* 279 Wis. 2d 712, ¶ 10. In *Trujillo,* "[w]e reiterate[d] that the decision to modify a sentence upon the finding of a new factor is left to the sound discretion of the circuit court." *Id.,* ¶ 29. *See also Tucker,* 279 Wis. 2d 697, ¶ 10 (accord). In addition, " 'a court has the power to correct formal or clerical errors or an illegal or a void sentence at any time.' Also, a court has the inherent authority to modify a sentence if . . . the sentence is 'unduly harsh or unconscionable.' " *Chrochiere,* 273 Wis. 2d 57, ¶ 12 (quoting *Hayes v. State,* 46

judicial power away from the trial court and give it to the prosecuting attorney. The statute gives the sentencing court authority, subject to certain conditions, to change the sentence of the defendant after the court has pronounced sentence and after the defendant has begun to serve that sentence. In other words, the statute gives the court authority it does not otherwise have and does not transfer power between branches of government. The scheme therefore does not violate the separation of powers.

*Beanblossom v. State,* 637 N.E.2d 1345, 1348 (Ind. Ct. App. 1994).

Wis. 2d 93, 101–02, 175 N.W.2d 625 (1970); *Cresci v. State,* 89 Wis. 2d 495, 504, 278 N.W.2d 850 (1979)).

¶ 61. We see no reason why an inmate may not bring a motion seeking sentence reduction on multiple grounds, invoking separate powers of the circuit court at the same time. That is, there is nothing to prevent an inmate from bringing a motion seeking sentence reduction which: a) invokes the court's new power under § 973.195 to grant a petition for sentence adjustment subject to the conditions of that statute, and b) invokes the court's inherent power to modify a sentence based on a new factor, an unduly harsh sentence, and/or a legal error. While each invocation of the court's power must be evaluated under the constraints and legal standards pertinent to the power being addressed, there is no reason why a circuit court presented with such a motion could not modify a sentence based on a bona fide new factor, even if it must dismiss the petition for sentence adjustment based on a veto by the district attorney.

¶ 62. We reiterate: the ability of a district attorney to veto a petition for sentence adjustment under § 973.195 has absolutely no bearing on the court's inherent power to modify a sentence based on a new factor or a showing of an unduly harsh or illegal sentence and vice versa. The court's inherent power to modify a sentence on such bases remains subject to only those common-law standards set forth by this court. The court's power to grant a petition for sentence adjustment remains subject to the conditions precedent set forth in § 973.195. However, there is no reason why an inmate may not invoke both powers simultaneously.

¶ 63. In addition to his separation of powers argument, Stenklyft also argues that the prosecutorial veto provisions of § 973.195 violate his right to proce-

dural due process by depriving him of a fair and impartial decision-maker and by allowing the district attorney to arbitrarily deny a petition for sentence adjustment without providing any reasons. While Stenklyft has not specified whether he is asserting a due process violation under the state or federal constitution, "[t]his court has repeatedly stated that the due process clauses of the state and federal constitutions are essentially equivalent and are subject to identical interpretation." *State v. Hezzie R.*, 219 Wis. 2d 848, 891, 580 N.W.2d 660 (1998). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

¶ 64. A procedural due process analysis is a two-part inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.]" *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)(citations omitted). Thus, it is essential that the person claiming the constitutional violation establish that the state deprived him of a constitutionally protected interest in life, liberty, or property before the court may address whether the state employed constitutionally adequate process. *Capoun Revocable Trust v. Ansari*, 2000 WI App 83, ¶ 15, 234 Wis. 2d 335, 610 N.W.2d 129; *Robinson v. McCaughtry*, 177 Wis. 2d 293, 300, 501 N.W.2d 896 (Ct. App. 1993). "The procedural guarantees of the due process clause apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *State ex rel. First*

*Nat'l Bank v. M & I Peoples Bank of Coloma,* 95 Wis. 2d 303, 310, 290 N.W.2d 321 (1980). Therefore, if an inmate cannot prove a protected liberty or property interest, "he is not entitled to any due process protections." *State ex rel. Gendrich v. Litscher,* 2001 WI App 163, ¶ 10, 246 Wis. 2d 814, 632 N.W.2d 878.

¶ 65. Stenklyft largely ignores the first step in this analysis, instead concentrating his argument on why the process provided by § 973.195 is constitutionally infirm. Stenklyft simply makes a conclusory statement that § 973.195 "creates a procedure under which persons have a right to petition the sentencing court for a reduction of their sentence. By doing so, it triggers [due process protections]." Resp't Br. at 26. Therefore, we assume Stenklyft is grounding his procedural due process challenge on a deprivation of a constitutionally protectible liberty interest. To obtain a protectible liberty interest: " 'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex,* 442 U.S. 1, 7 (1979) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972)).

¶ 66. Stenklyft correctly notes that § 973.185 provides a procedure whereby an inmate may petition to be released before he has served his entire initial term of confinement. As explained *supra,* insomuch as the statute provides a mechanism whereby an inmate may obtain early release from prison, § 973.195 is somewhat analogous to parole statutes. Thus, we shall turn to case law involving procedural due process challenges to parole, as the same interest Stenklyft asserts is implicated by the parole statutes. In the parole context:

> There is no constitutional or inherent right of a

> convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right[.]

*Id.* "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained." *Id.* at 11.

¶ 67. However, courts have recognized that "[w]hile there is no constitutional right to parole, a state may create a protected liberty interest in parole through its statutes and regulations governing the parole decision-making process." *Heidelberg v. Ill. Prisoner Review Bd.,* 163 F.3d 1025, 1026 (7th Cir. 1998)(citing *Greenholtz,* 442 U.S. at 12). *See also Felce v. Fiedler,* 974 F.2d 1484, 1490 (7th Cir. 1992)(accord).

¶ 68. Stenklyft has not shown that there is a constitutional right to "sentence adjustment." Thus, he must demonstrate that § 973.195 creates a protected liberty interest in early release through sentence adjustment. In other words, Stenklyft must demonstrate that, by virtue of the language utilized in § 973.195, he has a "legitimate claim of entitlement" to early release through sentence adjustment. *Greenholtz,* 442 U.S. at 7 (quoting *Roth,* 408 U.S. at 577).

¶ 69. In the context of parole, "[a] state creates an expectation of release that rises to the level of a liberty interest within the meaning of the Due Process Clause if its parole system *requires release* whenever a parole board or similar authority determines that the necessary prerequisites exist." *Heidelberg,* 163 F.3d at 1026 (emphasis added). Thus, statutes that *mandate* release if, when, or unless certain conditions are met "create[] a presumption that parole release will be granted" and

give rise to a protected liberty interest. *Bd. of Pardons v. Allen,* 482 U.S. 369, 378 (1987). In contrast, statutes do not give rise to a protectible liberty interest if they provide that parole is discretionary, by stating that parole "may" be granted in certain circumstances. *Id.,* n.10. In other words, parole statutes that create a "legitimate expectation of release" give rise to a protected liberty interest. *Greenholtz,* 442 U.S. at 12.

¶ 70. As such, Wisconsin's mandatory parole scheme, Wis. Stat. § 302.11(1), creates a protectible liberty interest by providing that "each inmate is entitled to mandatory release on parole" after serving two thirds of his sentence. *Gendrich,* 246 Wis. 2d 814, ¶ 7. In contrast, Wisconsin's discretionary parole scheme, Wis. Stat. § 304.06(1)(b), does not create a protectible liberty interest because it provides that "the parole commission may parole an inmate" after he has served 25 percent of his sentence. *Gendrich,* 246 Wis. 2d 814, ¶ 7. *See also Frederick v. Frank,* 2004 WL 2915316, *3 (W.D. Wis. Dec. 10, 2004) (summarizing Wisconsin law). Likewise, Wisconsin's presumptive mandatory release scheme does not give rise to a protectible liberty interest because it "permits the Commission to deny mandatory release to otherwise eligible prisoners when, in its discretion, the prisoner either poses a risk to the public or refuses to participate in necessary counseling and treatment." *Gendrich,* 246 Wis. 2d 814, ¶ 10. *See also State v. Gamble,* 2002 WI App 238, ¶ 21, 257 Wis. 2d 689, 653 N.W.2d 143 (accord).

¶ 71. Applying these standards to § 973.195, we conclude that the statute does not create a legitimate expectation of early release through sentence adjustment. Section 973.195(1r)(f) provides:

> If the sentencing court receives no objection to sentence adjustment from the district attorney under

par. (c) or the victim under par. (d) and the court determines that sentence adjustment is in the public interest, *the court may adjust* the inmate's sentence as provided under par. (g). The court shall include in the record written reasons for any sentence adjustment granted under this subsection.

(Emphasis added.)

¶ 72. First, it should be patently obvious that the mere existence of the prosecutorial veto in § 973.195(1r)(c) & (f) precludes any legitimate expectation of early release through sentence adjustment. As discussed previously, § 973.195(1r)(c) *requires* the circuit court to dismiss the petition for sentence adjustment upon the objection of the district attorney. Likewise, § 973.195(1r)(f) conditions the circuit court's discretionary power to grant the petition upon there being no objection from the district attorney.

¶ 73. Second, and more importantly, § 973.195(1r)(f) provides that when there is no objection from the district attorney, "the court *may* adjust the inmate's sentence" if "the court determines that sentence adjustment is in the public interest." (Emphasis added.) Thus, ultimately, § 973.195(1r)(f) leaves it to the circuit court's discretion whether to grant the petition. The statute does not state that the court "must" grant the petition if it finds it is in the public interest. Rather, once the statutory prerequisites have been satisfied, the circuit court "may," in its discretion, grant the petition. Wis. Stat. § 973.195(1r)(f). In other words, while § 973.195(1r)(c) mandates that the circuit court dismiss the petition under certain circumstances, § 973.195(1r)(f) does not *require* or *mandate* that the circuit court grant the petition under any set of circumstances.

¶ 74. As such, § 973.195 creates no presumption of early release through sentence adjustment. The statute does not provide inmates with a "legitimate claim of entitlement" to sentence adjustment. *Greenholtz,* 442 U.S. at 7 (quoting *Roth,* 408 U.S. at 577). The sentence adjustment statute provides no "legitimate expectation of release." *Id.* at 12. Rather, § 973.195 merely "holds out the *possibility*" of sentence adjustment and provides "no more than a mere hope that the benefit will be obtained." *Id.* at 11. Under § 973.195, "there is no set of facts which, if shown, *mandate* a decision favorable to the individual." *Id.* at 10 (emphasis added). In other words, Stenklyft "is not *entitled* to release" through sentence adjustment under any set of facts. *Gendrich,* 246 Wis. 2d 814, ¶ 10. Therefore, because § 973.195 creates no legitimate expectation of early release through sentence adjustment, it does not give rise to a protectible liberty interest and Stenklyft's procedural due process claim must fail.

¶ 75. Stenklyft's final argument is that if § 973.195 is constitutional, then district attorneys could categorically deny petitions from inmates in a discriminatory fashion or approve only the petitions of inmates who contribute to organizations favored by the prosecutor. However, Stenklyft has presented no evidence of these sorts of practices in this case. While inmates may well be able to pursue other "as applied" constitutional challenges to the use of the prosecutorial veto in § 973.195, Stenklyft has failed to establish the necessary predicate of his procedural due process claim.

## V. SUMMARY

¶ 76. We conclude, in accordance with *Tucker,* 279 Wis. 2d 697, ¶¶ 22–24, that § 973.195 applies to inmates sentenced under TIS-I and that the felony clas-

sification system employed by TIS-II should be utilized to determine the "applicable percentage" of the term of initial confinement an inmate sentenced under TIS-I must serve in order to file a petition for sentence adjustment. That "applicable percentage" is then applied to the sentence originally imposed to determine if the inmate is eligible to file a petition under § 973.195(1g). *Id.*, ¶ 23. Because the crime for which Stenklyft was convicted is now classified as a Class F felony and there is no dispute that he served 75 percent of the initial confinement portion of his sentence, we conclude that his petition for sentence adjustment was not premature under § 973.195(1g).

¶ 77. In addition, we hold that the plain language of § 973.195 requires the circuit court to dismiss the petition upon the objection of the district attorney. Finally, we conclude that § 973.195 is not unconstitutional. Section 973.195 does not violate the separation of powers doctrine because it does not intrude upon the judiciary's inherent power to modify sentences. Rather, the statute allows for early release by creating a new power of sentence adjustment that is shared among all three governmental branches. The legislature is entitled to grant the judiciary new discretionary authority subject to enumerated conditions. The legislature, through § 973.195, simply has provided courts with a discretionary power they previously did not have that is subject to certain conditions precedent.

¶ 78. Furthermore, § 973.195 does not violate procedural due process because an inmate has no protected liberty interest in early release from prison by sentence adjustment. The statute creates no legitimate expectation of sentence adjustment because the circuit court's decision to grant sentence adjustment is purely

discretionary under the statute and Stenklyft is not *entitled* to sentence adjustment under any set of facts.

¶ 79. Therefore, because we determine § 973.195 is constitutional and the district attorney vetoed Stenklyft's petition, we reverse the decision of the circuit court granting his petition for early release and its decision denying the State's motion for reconsideration.

¶ 80. I am authorized to state that Justices DAVID T. PROSSER and PATIENCE DRAKE ROGGENSACK join this opinion.

*By the Court.*—The orders of the circuit court are reversed and remanded.

¶ 81. SHIRLEY S. ABRAHAMSON, C.J. (*concurring in part and dissenting in part*). I agree with the lead opinion that the order of the circuit court should be reversed. Because I disagree with the lead opinion's conclusion that Wis. Stat. § 973.195 should be interpreted to allow a district attorney to veto a petition for sentence adjustment and that the statute so interpreted is constitutional, I conclude that the matter should not be remanded for the circuit court to deny the petition for sentence adjustment. I would, as Justice Crooks explains, remand for the circuit court to exercise its discretion whether to grant the petition for sentence adjustment. I do not address mootness; mootness has not been raised, argued, or briefed.

¶ 82. Because Justices Ann Walsh Bradley, N. Patrick Crooks, and Louis B. Butler join this concurrence/dissent and because Justices Ann Walsh Bradley and Louis B. Butler and I join the concurrence/dissent of Justice N. Patrick Crooks, we four form a majority (1) to declare that Wis. Stat. § 973.195 should be interpreted, to save its constitu-

tionality, so that a circuit court has discretion to consider (but is not bound by) a district attorney's objection to a petition for sentence adjustment, and (2) to declare unconstitutional the lead opinion's interpretation of Wis. Stat. § 973.195 to grant a district attorney a veto power over a petition for sentence adjustment.

¶ 83. The net effect of the two concurring/dissenting opinions is that read together, "shall" is interpreted as directory, thereby giving a circuit court discretion to accept or reject an objection from a district attorney on a petition for sentence adjustment under Wis. Stat. § 973.195. Thus, this cause goes back to the circuit court for a full consideration of the factors set forth in Justice Crooks' concurring opinion.

¶ 84. We conclude that the judicial power is compromised when the district attorney is given the unilateral power to end a circuit court's consideration of an inmate's petition for sentence adjustment. A district attorney's exercise of a core judicial function is barred by the separation of powers doctrine.[1]

¶ 85. Wisconsin Stat. § 973.195(1r)(c) is unconstitutional if read to grant a district attorney veto power over a petition for sentence adjustment. A district attorney's veto power invades the exclusive core constitutional power of the judiciary to impose a criminal penalty. It empowers an executive branch officer to direct a court decision on the merits of a case, thereby violating the doctrine of separation of powers under the state constitution.[2]

---

[1] *State v. Olson,* 325 N.W.2d 13, 18 (Minn. 1982).

[2] I would treat the district attorney's veto as a severable provision and excise it.

531

¶ 86. Even if we were to conclude that the statute does not invade the exclusive core constitutional powers of the judiciary, the elimination of a circuit court's power to decide an inmate's petition without the approval of the district attorney is an impermissible burden and substantial interference with the judicial branch's authority.[3] The statute interferes with the impartial administration of justice by delegating judicial power to one of the parties in the litigation.

## I

¶ 87. The Wisconsin Constitution vests the legislative power in the two houses of the legislature[4] and the executive power in the governor.[5] The Wisconsin Constitution vests the judicial power of the state in the unified court system as follows:

> The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform state-wide jurisdiction as the legisla-

---

The lead opinion goes to great length, making numerous arguments to uphold the statute. I do not undertake an analytical critique of each argument, although I could. The lead opinion builds its case on weak underpinnings, supported by quotations taken out of context. Very little research by a reader will quickly reveal the weaknesses that permeate the lead opinion.

[3] *State ex rel. Friedrich v. Dane County Circuit Court,* 192 Wis. 2d 1, 14, 531 N.W.2d 32 (1995).

[4] Wis. Const. art. IV, § 1.

[5] Wis. Const. art. V, § 1.

ture may create by law, and a municipal court if authorized by the legislature under section 14.[6]

¶ 88. The doctrine of separation of powers is implicit in the division of governmental powers among the judicial, legislative, and executive branches.[7] The principles of separation of powers are easy to state but the boundaries that separate the powers of the three branches are "shadowy and not well defined. It is the duty of the court to define them, and see that they are respected."[8]

¶ 89. A well-accepted principle is that each branch has exclusive core constitutional powers upon which no other branch may intrude.[9] This court explained the exclusive core constitutional powers of each branch more than 70 years ago. This explanation remains good law today: "The co-ordinate branches of the government . . . should not abdicate or permit others to infringe upon such powers as are exclusively committed to them by the constitution."[10] As this court has said:

> In Wisconsin the jurisdiction and power of the courts is conferred, not by act of the Legislature, but by the

[6] Wis. Const. art. VII, § 2.

[7] *Friedrich,* 192 Wis. 2d at 15; *State v. Holmes,* 106 Wis. 2d 31, 38, 68–69, 315 N.W.2d 703 (1982).

[8] *Thoe v. Chicago, Milwaukee & St. Paul Ry. Co.,* 181 Wis. 456, 195 N.W.407 (1923). *See also Barland v. Eau Claire County,* 216 Wis. 2d 560, 573, 575 N.W.2d 691 (1998); *Demmith v. Wisconsin Judicial Conference,* 166 Wis. 2d 649, 663, 480 N.W.2d 502 (1992); *State v. Holmes,* 106 Wis. 2d 31, 42–43, 315 N.W.2d 703 (1982).

[9] *In re Complaint Against Grady,* 118 Wis. 2d 762, 778, 348 N.W.2d 559 (1984).

[10] *Rules of Court Case,* 204 Wis. 501, 514, 236 N.W. 717 (1931).

Constitution itself. While the Legislature may regulate in the public interest the exercise of the judicial power, it cannot, under the guise of regulation, withdraw that power or so limit and circumscribe it as to defeat the constitutional purpose.[11]

¶ 90.　Many powers are not, however, exclusively committed to one of the branches, but are shared powers. The court has admonished that as to shared powers "there should be such generous co-operation as will tend to keep the law responsive to the needs of society."[12] With regard to shared powers, the legislature cannot impose an unreasonable burden and substantial interference with the judicial branch's authority.[13]

¶ 91.　Sentencing a defendant is an area of shared responsibility,[14] and, broken down to its component parts, requires each of the three branches of government to exercise a core power. The legislature prescribes the penalty and the manner of its enforcement.[15] The courts impose the penalty (the sentence).

---

[11] *John F. Jelke Co. v. Hill,* 208 Wis. 650, 660, 242 N.W. 576 (1932).

[12] *Rules of Court Case,* 204 Wis. at 514. *See also Demmith v. Wis. Judicial Conference,* 166 Wis. 2d 649, 663, 480 N.W.2d 502 (1992).

[13] *Friedrich,* 192 Wis. 2d at 14.

[14] *State v. Borrell,* 167 Wis. 2d 749, 767, 482 N.W.2d 883 (1992).

[15] *State v. Setagord,* 211 Wis. 2d 397, 407, 565 N.W.2d 506 (1997) (citing *In Matter of Judicial Administration Felony Sentencing Guidelines,* 120 Wis. 2d 198, 203, 353 N.W.2d 793 (1984)); *State v. Lindsey,* 203 Wis. 2d 423, 440–41, 554 N.W.2d 215 (Ct. App. 1996).

The executive branch decides what criminal charges to file, carries out the court-imposed sentence, and grants pardons.[16]

¶ 92. What is at issue in the present case is not a legislative enactment prescribing a penalty or fixing a sentencing range. Nor is the executive's act of charging, executing the sentence, or granting clemency at issue. Rather, Wis. Stat § 973.195 implicates the court's constitutional power to impose a criminal sentence. And as the lead opinion acknowledges, a circuit court's power to impose a sentence embraces the court's power to modify the sentence. Lead op., ¶ 38. "To reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance."[17] Wisconsin Stat. § 973.195 involves a court's power to examine the act committed and the person committing it in adjusting a sentence the circuit court has imposed.

¶ 93. The question then is whether a circuit court's power to decide a petitioner's request for sentence adjustment under Wis. Stat. § 973.195 involves an exclusive core judicial power or involves a power shared with district attorneys, members of the executive branch of government. We conclude that this statute overreaches the legislative power to define and punish criminal conduct. Wisconsin Stat. § 973.195 directly affects the judicial branch's role in the sentencing

---

[16] *Borrell,* 167 Wis. 2d at 767.

[17] *United States v. Benz,* 282 U.S. 304, 311 (1931). *See also State v. Nardini,* 445 A.2d 304, 312 (Conn. 1982) ("The power [to adjust a sentence under the legislative enactment] . . . is in effect only a change of judgment, and for that reason [is] a radically different thing from [executive action upon a sentence, such as a pardon]" (quoted source omitted)).

535

process: imposing the sentence penalty and exercising discretion in adjusting the length of a sentence that a court has imposed.

· ¶ 94. The text of the statute evinces a clear violation of the separation of powers doctrine:

**973.195 Sentence Adjustment.**[18]

. . . .

(1r) Confinement in Prison. (a) An inmate who is serving a sentence . . . may petition the sentencing court to adjust the sentence . . . .

. . . .

(c) Upon receipt of a petition filed under par. (a), the sentencing court may deny the petition or hold the petition for further consideration. If the court holds the petition for further consideration, the court shall notify the district attorney of the inmate's petition. If the district attorney objects to adjustment of the inmate's sentence within 45 days of receiving notification under this paragraph, the court shall deny the inmate's petition.

. . . .

---

[18] The lead opinion finds it "significant that § 973.195 is specifically titled 'Sentence adjustment' rather than 'Sentence modification.'" Lead op., ¶ 44. Statutory interpretation has reached a new level if the difference between "sentence modification" and "sentence adjustment" qualifies as "significant." This court, which so frequently resorts to the dictionary for statutory interpretation, fails to look up the words "adjustment" and "modification." If it did, it would find them synonyms. *The American Heritage Dictionary of the English Language* defines "adjustment" as "a *modification,* fluctuation, or correction" and "modification as "[a] small alteration, *adjustment,* or limitation." *The American Heritage Dictionary of the English Language* 22, 1161 (3d ed. 1992) (emphasis added).

(f) If the sentencing court receives no objection to sentence adjustment from the district attorney under par. (c) or the victim under par. (d) and the court determines that sentence adjustment is in the public interest, the court may adjust the inmate's sentence as provided under par. (g). The court shall include in the record written reasons for any sentence adjustment granted under this subsection.

. . . .

(i) An inmate may submit only one petition under this subsection for each sentence imposed under s. 973.01.

¶ 95. According to the statute, an inmate first files a petition with the circuit court that originally sentenced the inmate.[19] When an inmate files a petition under Wis. Stat. § 973.195, the inmate is requesting a judicial determination on the merits of the petition, namely that he or she has met one of the criteria in § 973.195(1r)(b).[20] If, based on the merits of the petition, the circuit court decides not to grant the petition,

---

[19] Wis. Stat. § 973.195(1r)(a). It is notable that the petition must be filed with the sentencing court, not just any circuit court. This requirement further supports the notion that sentence adjustment is a continuation of a circuit court's sentencing power.

[20] Wisconsin Stat. § 973.195(1r)(b) reads:

Any of the following is a ground for a petition under par. (a):

1. The inmate's conduct, efforts at and progress in rehabilitation, or participation and progress in education, treatment, or other correction programs since he or she was sentenced.

3. A change in law or procedure related to sentencing or revocation of extended supervision effective after the inmate was sentenced that would have resulted in a shorter term of confinement in prison or, if the inmate was returned to prison upon revocation of extended supervision, a shorter period of confinement in prison

the proceedings end. The inmate loses. So far so good. No problem.

¶ 96. If, however, a circuit court is considering the possibility of granting the petition, it must notify the district attorney. If the district attorney objects to the circuit court's adjustment of the inmate's sentencing, the circuit court *must deny* the petition. And once an inmate files under the statute and the district attorney objects to a circuit court's adjustment of the inmate's sentencing, the inmate may never seek another sentence adjustment under Wis. Stat. § 973.195 for that sentence,[21] no matter how meritorious his or her claim for relief may be, and even if granting the petition would be in the "interests of justice."[22]

¶ 97. The fundamental problem with the statute is that it requires the circuit court to render a particular decision, namely a denial of a petition brought by the inmate, not upon the merits of the a petition but upon the decision of a district attorney. And the district attorney's "No adjustment for you!" is final for all time. The district attorney holds the keys to the inmate's ability to get a decision on the merits from the circuit court.

¶ 98. This court has declared numerous times that the power to decide an individual case is an

upon revocation, if the change had been applicable when the inmate was sentenced.

4. The inmate is subject to a sentence of confinement in another state or the inmate is in the United States illegally and may be deported.

5. Sentence adjustment is otherwise in the interests of justice.

[21] Wis. Stat. § 973.195(1r)(i).

[22] Wis. Stat. § 973.195(1r)(b)5.

exclusive core judicial power. The power to decide a case on the merits is the "essence of the court's function."[23] A statute cannot "compel the circuit court to decide a case in a particular way", thus "mandat[ing] the result of the case."[24]

¶ 99.　Several cases, old and of recent vintage, are illustrative of the well-established principles governing the instant statute: the power to decide an individual case is an exclusive core judicial power, and any invasion of the exclusive core constitutional powers of the judiciary violates the doctrine of separation of powers under our state constitution. The legislature cannot compel a circuit court to decide a case in a particular way.

¶ 100.　In *Davis v. Village of Menasha*, 21 Wis. 491, 497 (1867), this court struck down as a violation of separation of powers a law that required a trial court to grant a new trial upon the request of either party if the presiding judge died or left the state before expiration of the time for settling a bill of exceptions. The court invalidated the statute, explaining:

> No room is left for the exercise of the judgment and discretion of the court, but the judgment must be set aside and a new trial allowed in the specified case, providing the application is made at the time and in the manner there prescribed. It seems to us that this law, then, may well be held to be the exercise of judicial

[23] *State v. Mitchell,* 144 Wis. 2d 596, 618, 424 N.W.2d 698 (1988) (upholding rape shield statute against a separation of powers attack, but citing four Wisconsin Supreme Court cases for the proposition that a statute's mandating the result in a case is unconstitutional).

[24] *Id.*

539

functions, not vested in the legislature, but belonging to another department of the government under our constitution.[25]

¶ 101. Again, this time in *City of Janesville v. Carpenter*, 77 Wis. 288, 46 N.W.2d 128 (1890), this court held unconstitutional a statute that required a trial court to issue an injunction, even though the petitioner did not prove damages justifying an injunction. Because the statute "takes away the jurisdiction of the courts to inquire into the facts and determine the necessity and propriety of granting or refusing an injunction," the court held the statute unconstitutional.[26]

¶ 102. In *Thoe v. Chicago, Milwaukee & St. Paul Railway Co.*, 181 Wis. 456, 195 N.W. 407 (1923), this court held unconstitutional a statute prohibiting a trial court from granting a directed verdict before submitting the case to the jury.[27] We said a motion to direct a verdict calls for the exercise of legal judgment, an exercise of judicial power, and is not to be decided by legislative fiat. The court wrote:

> Neither has the legislature power to declare in advance that the evidence is legally sufficient in every case. It may or it may not be. Whether it is or not is for the

---

[25] *Davis v. Village of Menasha*, 21 Wis. 491, 497, (1867).

[26] *City of Janesville v. Carpenter*, 77 Wis. 288, 301, 46 N.W. 128 (1890), explained:

> The legislature usurped the judicial power of the courts by the enactment of this statute. It adjudicates an act unlawful and presumptively injurious and dangerous, which is not and cannot be made to be so without a violation of the constitutional rights of the defendant, and imperatively commands the court to enjoin it without proof that any injury or danger has been or will be caused by it.

[27] *Thoe v. Chicago, Milwaukee & St. Paul Ry. Co.*, 181 Wis. 456, 195 N.W. 407 (1923).

court to determine in the exercise of the powers conferred upon it by the constitution. A motion to direct a verdict calls for the exercise of legal judgment by applying the law to the facts of each case. It cannot be done wholesale by legislative fiat.[28]

¶ 103. *In re E.B.,* 111 Wis. 2d 175, 186, 330 N.W.2d 584 (1983), this court held that the legislature could require a circuit court to give the jury a copy of written instructions but could not mandate reversal if the circuit court did not abide by the statute. "Legislation which mandates automatic reversal of trial court judgments upon [the statute's] violation impermissibly limits and circumscribes judicial power."[29]

¶ 104. In *Joni B. v. State,* 202 Wis. 2d 1, 8, 549 N.W.2d 411 (1996), the court held that it was a violation of separation of powers for the legislature to prohibit a court from appointing counsel for anyone other than the child in CHIPS proceedings. The court stated that a circuit court's power to appoint counsel is an inherent power to serve the interests of the circuit court and that a court may use its inherent authority to appoint counsel for the orderly and fair presentation of a case. The legislative enactment impermissibly infringed upon that judicial power.

¶ 105. Because deciding the merits of a case is the essence of a court's function, and because the statute delegates to a district attorney the power to mandate the denial of a petition in each case, we conclude that the legislation in question is an unconstitutional violation of the doctrine of separation of powers.

---

[28] *Id.* at 465.

[29] *In re E.B.,* 111 Wis. 2d 175, 186, 330 N.W.2d 584 (1983).

¶ 106. To make matters worse, if that is possible, the district attorney has represented the State as its attorney in investigating, charging, and prosecuting the criminal charges against the inmate.[30] Once charges are filed, the district attorney becomes the attorney for the State, a party to the criminal proceedings, and is subject to the court's authority.[31] Thus the statute allows a circuit court's deliberative process and judgment to be circumvented by one of the parties involved in the litigation: the district attorney.[32] The statute allows the district attorney to decide—unilaterally—whether an inmate's sentence will be adjusted, and thereby unconstitutionally impairs the judiciary's duty to administer justice impartially, as well as being violative of the separation of powers doctrine.[33]

---

[30] Wisconsin Stat. § 973.195 does not state who is a party to the adjustment proceedings other than the inmate if the district attorney does not object to an adjustment.

[31] Once the prosecution has commenced, the case is subject to the court's exclusive authority in many ways. *See State v. Prihoda,* 2000 WI 123, ¶ 19, 239 Wis. 2d 244, 618 N.W.2d 857 (changes to the sentence portion of a written judgment of conviction can be authorized only by a judge); *State v. Comstock,* 168 Wis. 2d 915, 927, 485 N.W.2d 354 (1992) (district attorney may not bind a court to a plea agreement, nor may a district attorney amend charges without permission from the court); *State v. Johnson,* 231 Wis. 2d 58, 64–65, 604 N.W.2d 902 (Ct. App. 1999) (court determines whether probable cause exists to believe the defendant committed the charged crime; if probable cause is lacking, the court dismisses the charge); *State v. Dums,* 149 Wis. 2d 314, 321–22, 440 N.W.2d 814 (Ct. App. 1989) (district attorney cannot, *sua sponte,* dismiss charges).

[32] Wis. Stat. § 973.195(1r)(c).

[33] Other state courts have declared invalid a statute giving the prosecutor the ability to veto a court's sentence. *See State v.*

¶ 107. We know of no other instance in the law in which a party to a judicial proceeding can unilaterally determine the outcome of the proceeding on its merits. Even when a party defaults or concedes the correctness of an opposing party's cause, an independent court decision is required.

¶ 108. Thus, even if we were to conclude that the statute does not invade the exclusive core constitutional powers of the judiciary, the elimination of a circuit court's power to decide an inmate's petition without the approval of the district attorney is an impermissible burden and a substantial interference with the judicial branch's ability to administer justice impartially.[34]

## III

¶ 109. The State argues, and the lead opinion agrees, that Wis. Stat. § 973.195 can be upheld as the equivalent of parole, an executive function that the

*Prentiss,* 786 P.2d 932, 936 (Ariz. 1989) (statutory provision that allowed a judge to impose an alternative sentence only upon prosecutor's consent was invalid as a violation of separation of powers); *People v. Superior Court (On Tai Ho),* 520 P.2d 405, 407 (Cal. 1974) (statutory provision that gave prosecutor the power to veto a court's decision to an alternative sentence was an unconstitutional violation of separation of powers); *State v. LeCompte,* 406 So. 2d 1300, 1311 (La. 1981) (statutory provision that only allowed a judge to reduce a sentence if it was the prosecutor who moved for the change violated separation of powers); *State v. Olson,* 325 N.W.2d 13, 17–19 (Minn. 1982) (The question presented was: "Can the legislature, having granted authority to the courts to sentence without regard to the mandatory minimum provisions [of the statute], condition that authority upon a discretionary act of the prosecutor?" *Id.* at 17. The court said no, it violates separation of powers.).

[34] *Friedrich,* 192 Wis. 2d at 14.

district attorney may exercise. How can that be? Everyone knows that Truth in Sentencing was designed to eliminate parole. In any event, if sentence adjustment is parole, then the circuit court should not be involved. The judicial process ends at sentencing, at which point the executive branch of government takes over and the defendant is "directed to the correctional and rehabilitative process. . . . The judiciary phase of the criminal process—imposing a penalty—is complete."[35]

¶ 110. Parole is gone under Truth in Sentencing, and more importantly for this case, Wis. Stat. § 973.195 does not resurrect parole. Section 973.195 creates a judicial procedure in which an inmate seeks to have the sentencing court amend the judgment of conviction and have a lesser term of confinement or extended supervision imposed. The United State Supreme Court recognized in 1931 that only the court, not the executive branch, has the power to reduce a sentence by amending the judgment.[36]

¶ 111. The lead opinion opines that this procedure is constitutional, declaring that the district attorney's permission is just a "condition precedent" that must be met. Lead op., ¶ 51. The lead opinion's reasoning contravenes the clear words of the statute and is without weight. Permission by the prosecutor cannot be said to be a "condition precedent" because the plain text of the statute grants a circuit court power to consider the merits of an inmate's petition even before the district attorney is notified of the petition. If the district attorney's permission were simply a "condition precedent" to the consideration of an inmate's petition,

---

[35] *State v. Horn*, 226 Wis. 2d 637, 650, 594 N.W.2d 772 (1999).

[36] *United States v. Benz*, 282 U.S. 304, 311 (1931).

544

the circuit court would be utterly lacking discretion to consider the merits of the petition. The circuit court would have to notify the district attorney immediately upon filing of the petition and await the district attorney's green light to proceed.

¶ 112. But Wis. Stat. § 973.195(1r)(c) explicitly provides otherwise: "Upon receipt of a petition filed under par. (a), the sentencing court may deny the petition or hold the petition for further consideration."[37] The plain language grants the circuit court the discretion to consider the merits of an inmate's petition. Only if the sentencing court fails to deny the petition on the merits and holds the petition for further consideration does the district attorney come into play.

¶ 113. This statute granting the district attorney a veto power over a circuit court's decision-making process on an inmate's petition for sentence adjustment is constitutionally over the top.

IV

¶ 114. The lead opinion carefully explains that despite the statute, a circuit court has inherent power over sentence modification.[38] We agree with the lead opinion that a circuit court has inherent power over

---

[37] Wis. Stat. § 973.195(1r)(c).

[38] On this basis, the present case is significantly different from the Indiana court of appeals case cited by the lead opinion, *Beanblossom v. State*, 637 N.E.2d 1345 (Ind. Ct. App. 1994). Lead op., ¶ 69 n.16. In *Beanblossom*, the court of appeals was very explicit in stating that trial courts in Indiana do *not* have inherent power to modify a sentence, and that if they did, the result of the case might very well be different. The court said:

sentence modification. In a different sentencing era, this court significantly limited a circuit court's power over sentence modification. Those limitations made sense when the legislature gave the executive branch the power to allow an inmate's early release from incarceration.

¶ 115. Under our decisions that limit a circuit court's inherent power to modify a sentence, a circuit court may modify a sentence when the sentence is unduly harsh or unconscionable or has a legal error or on the basis of a new factor. If there are cases that overturn a sentence on the grounds that the sentence was too harsh or unconscionable they are few and far between. Few cases arise in which a circuit court has committed a legal error in sentencing. If a legal error occurs, clearly the circuit court should amend the sentence.

## V

¶ 116. Although the court must take care not to expand the judicial branch's exclusive judicial authority, the lead opinion in this case goes too far the other way.

¶ 117. Eighty years ago this court warned judges of their solemn duty to maintain the boundaries of judicial power unimpaired as follows:

> [The argument that the statute violates the separation of powers] presupposes that the trial court has the inherent power to effect the modification of a sentence and that the statute somehow takes this power away from the court. If the trial court had such inherent authority, then the statute in question might well be considered to have usurped that authority. The case law [in Indiana], however, indicates that the trial court does not have such inherent power under the circumstances.

*Beanblossom,* 637 N.E.2d at 1347.

546

[I]t is the solemn duty of every judge, as a sworn officer of the state, to maintain the boundaries of that power unimpaired.

. . . .

Courts have not, as some people suppose, any option in the matter. The people through the constitution have vested in the courts certain powers and charged the court with the responsibility for the exercise of those powers. Every judicial officer takes an oath that he [or she] will support and maintain the constitution. . . . [The judicial officer] may not fritter or barter away the power committed to his [or her] hands. He [or she] has assumed a responsibility which must be discharged with the utmost fidelity.[39]

¶ 118. Sadly, the lead opinion here has willingly conceded to the executive branch the most central aspect of the judiciary's power: the power to render a judgment in a case properly before it.

¶ 119. We therefore write separately on the issue of the unconstitutionality of the statute if it is interpreted as granting a district attorney veto power over a petition for sentence adjustment.

¶ 120. I am authorized to state that Justices ANN WALSH BRADLEY, N. PATRICK CROOKS, and LOUIS B. BUTLER, JR. join this opinion.

¶ 121. N. PATRICK CROOKS, J. (*concurring in part and dissenting in part*). Here, it is necessary to construe "shall" as directory and permissive, in order to save the constitutionality of the statute. I agree with the concurrence/dissent of Chief Justice Abrahamson that the statute, if interpreted as mandatory, is unconstitutional. If we interpret "shall" as mandatory, such

---

[39] *Thoe,* 181 Wis. at 467–68.

interpretation "invades the exclusive core constitutional power of the judiciary to impose a criminal penalty." Chief Justice Abrahamson's concurrence/dissent, ¶ 83. If the circuit court is left with no discretion other than to deny an inmate's petition for sentence adjustment when the district attorney objects, such an interpretation interferes with the circuit court's inherent power to modify a sentence. I also agree with the Abrahamson concurrence/dissent that a district attorney's exercise of a core judicial function would be a clear violation of the separation of powers doctrine. *See id.*, ¶¶ 3, 18–22; *State v. Olson*, 325 N.W.2d 13, 18 (Minn. 1982); *Joni B. v. State*, 202 Wis. 2d 1, 8, 549 N.W.2d 411 (1996); *In Matter of E.B.*, 111 Wis. 2d 175, 186, 330 N.W.2d 584 (1983); *Thoe v. Chicago, Milwaukee & St. Paul Ry. Co.*, 181 Wis. 456, 195 N.W. 407 (1923); *City of Janesville v. Carpenter*, 77 Wis. 288, 46 N.W.2d 128 (1890); *Davis v. Vill. of Menasha*, 21 Wis. 497 (1867).

¶ 122. If at all possible, we should construe a statute in a way that will save it as constitutional. When this court decided *In re Hezzie*, 219 Wis. 2d 848, 580 N.W.2d 660 (1998), we concluded that "[s]tatutes are presumed to be constitutional; therefore, 'every presumption must be indulged to uphold the law if at all possible.'" *Id.* at 862 (quoting *Norquist v. Zeuske*, 211 Wis. 2d 241, 250, 564 N.W.2d 748 (1997); *see also State ex rel. Fort Howard Paper Co. v. Lake Dist. Bd.*, 82 Wis. 2d 491, 505, 263 N.W.2d 178 (1978) ("The cardinal rule of statutory construction is to preserve a statute and find it constitutional if it is at all possible to do so."); *White House Milk Co. v. Reynolds*, 12 Wis. 2d 143, 150–51, 106 N.W.2d 441 (1960) ("It is an elementary principle of law in this state that this court will search

for a means to sustain a statute. . . . In fact, this court has in the past and will continue to sustain the constitutionality of a statute if any facts can be reasonably conceived which will support its constitutionality."). In this case, the lead opinion makes no effort to interpret the so-called veto provision in a way that will save the constitutionality of the statute. Instead, the lead opinion simply states: "While some may argue that we could avoid addressing the constitutionality of § 973.195 by reading limiting language into the statute, this is not the case." Lead op., ¶ 43. The lead opinion then proceeds to ignore much of our case law, and relies only on *State v. Sprosty,* 227 Wis. 2d 316, 595 N.W.2d 692 (1999).

¶ 123. I concur with the mandate of the lead opinion to reverse, but I would decide this case by holding that the apparent veto given to a district attorney by the Wisconsin Legislature in Wis. Stat. §§ 973.195(1r)(c) and (f) (2003–04)[1] is one where a circuit court has discretion to accept or reject the objection of a district attorney on a sentence adjustment petition. The use of the word "shall" is, I believe, not mandatory, but rather was intended by the legislature to be directory and permissive. I do not believe that the legislature intended to enact a statute that would interfere with a circuit court's inherent power and run afoul of the separation of powers doctrine.

¶ 124. This court has, in several instances, considered whether the use of the word "shall" was directory, rather than mandatory. *See State ex rel. Marberry v. Macht,* 2003 WI 79, ¶ 15, 262 Wis. 2d 720, 665 N.W.2d

---

[1] Unless otherwise indicated all references to the Wisconsin Statutes are to the 2003–04 edition.

155; *Eby v. Kozarek,* 153 Wis. 2d 75, 79, 450 N.W.2d 249 (1990); *Karow v. Milwaukee County Civil Serv. Comm.,* 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978); *Merkley v. Schramm,* 31 Wis. 2d 134, 138, 142 N.W.2d 173 (1966); *Kamuchey v. Trzesniewski,* 8 Wis. 2d 94, 100, 98 N.W.2d 403 (1959); *Galewski v. Noe,* 266 Wis. 7, 16, 62 N.W.2d 703 (1954); *Wallis v. First Nat'l Bank,* 155 Wis. 533, 536, 145 N.W.2d 195 (1914). In order to determine whether "shall" is mandatory or directory, "we must consider several factors, including 'the existence of penalties for failure to comply with the limitation, the statute's nature, the legislative objective for the statute, and the potential consequences to the parties, such as injuries or wrongs.' " *Fond du Lac County v. Elizabeth M.P.,* 2003 WI App 232, ¶ 22, 267 Wis. 2d 739, 672 N.W.2d 88 (quoting *Macht,* 262 Wis. 2d 720, ¶ 15). "Thus, 'the determination of whether "shall" is mandatory or directory is not governed by a *per se* rule.' " *Macht,* 262 Wis. 2d 720, ¶ 15 (quoting *State v. R.R.E,* 162 Wis. 2d 698, 707, 470 N.W.2d 283 (1991)). The lead opinion fails to analyze and apply these factors and fails to probe legislative intent and history. *See GMAC Mortgage Corp. v. Gisvold,* 215 Wis. 2d 459, 479, 572 N.W.2d 466 (1998); *Wauwatosa v. Milwaukee County,* 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963).

¶ 125. In light of the above cases, I take issue with the lead opinion's conclusion that the language cannot be read in Wis. Stat. §§ 973.195(1r)(c) and (f), in order to find that "shall" is directory. Lead op., ¶¶ 43–46. While I agree with the mandate to reverse and agree with the lead opinion's assertion that the legislature's use of the word "shall" in a statute is presumably mandatory, I strongly disagree with its attempt to make this presumption, in effect, a per se rule. It is not. If

"shall" and "may" are used by the legislature in the same statutory provision, a court should consider the other factors noted above before determining whether the use of the word "shall" was intended to be mandatory or directory, especially where such determination involves the question of whether the statute is constitutional. Here the most significant factor is the one that acknowledges the legislative objective and furthers it by construing the statute in a manner that preserves its constitutionality.

¶ 126. If the statutes at issue were to be interpreted as containing a directory and permissive "shall," then the record of the proceedings must clearly demonstrate that the circuit court exercised its discretion and weighed the appropriate factors when the court reached its decision on sentence adjustment. An example of such balancing would be a record that showed that the circuit court considered the nature of the crime, character of the defendant, protection of the public, positions of the State and of the victim, and other relevant factors such as "[t]he inmate's conduct, efforts at and progress in rehabilitation, or participation and progress in education, treatment, or other correctional programs. . . ." Wis. Stat. § 973.195(1r)(b)1. Here, the record does not show that the circuit court weighed all of the appropriate factors when the court reached the decision to grant sentence adjustment.[2] Therefore, the

---

[2] While the circuit court considered some of these factors in the motion hearings for sentence adjustment and for reconsideration, the court did not make a sufficient record demonstrating an exercise of discretion in light of all of the appropriate factors. The circuit court did discuss the need for balancing, but only in regard to the incentive for rehabilitation of the defendant against the harm suffered by the victim and the victim's desire for punishment. The circuit court was correct when the

decision of the circuit court should be reversed, and I would remand this matter for a full consideration of the factors listed above. The lead opinion would remand for the circuit court to deny the petition for sentence adjustment, because the district attorney exercised the veto provision of § 973.195, which the lead opinion claims is mandatory and not directory. I dissent from that conclusion, and from the purpose for which the lead opinion would remand this matter.[3]

¶ 127. Additionally, if the provisions of the statute at issue are interpreted as being directory, then there is no need to address the issue of severability, as discussed in the briefs of counsel. Also, I do not address mootness, since no question in that regard was raised, argued or briefed by counsel.

¶ 128. In summary, in order to preserve the statute and find it constitutional, it must be construed as giving the circuit court discretion to accept or reject an objection from the district attorney on a petition for sentence adjustment. The use of "shall" here is directory, not mandatory.

¶ 129. For the reasons discussed herein, I respectfully concur in part and dissent in part.

---

court expressed concern over whether the absolute veto given to the district attorney would stand up, but stopped short of finding such a veto unconstitutional, stating that "I'm not reaching those issues today."

 [3] Since Chief Justice Shirley S. Abrahamson, Justices Ann Walsh Bradley, and Louis B. Butler, Jr. join this concurrence/dissent, and since I join the concurrence/dissent of Chief Justice Abrahamson, we form a majority on the directory nature of the statute and the reason for remand to the circuit court.

¶ 130. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR. join this concurrence/dissent.